## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **LIFESTYLE REALTY, LLC** | * | |
| **d/b/a DONNA KERR GROUP,** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | **Civ. No. MJM-23-629** |
| **v.** | * | |
| | * | |
| **SUSAN KIRN, et al.,** | * | |
| | * | |
| **Defendants** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Lifestyle Realty, LLC d/b/a Donna Kerr Group ("Plaintiff" or "DKG") brings this civil action against defendants Susan Kirn, Natalie Perez, Maura Fitzgerald, and Robin Goelman (collectively "Individual Defendants"), and Compass DMV LLC ("Compass"), asserting claims for (1) breach of contract, (2) breach of fiduciary duty of loyalty, (3) tortious interference of contract and prospective economic advantage, (4) misappropriation of trade secrets, (5) conversion, (6) fraudulent misrepresentation, (7) unfair competition, (8) civil conspiracy, (9) declaratory relief, (10) injunctive relief, (11) fraudulent concealment, and (12) unjust enrichment.[1]

Currently pending are Plaintiff's Motion for Leave to File a Third Amended Complaint ("Motion to Amend") and Individual Defendants' Motion to Dismiss. The Motions are ripe for disposition, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the foregoing

---

[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367 because Plaintiff's claim for misappropriation of trade secrets arises in part under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*

reasons, Plaintiff's Motion to Amend shall be granted, and Individual Defendants' Motion to Dismiss shall be granted in part and denied in part.

## I.    FACTUAL BACKGROUND[2]

DKG is a limited liability company ("LLC") formed in Maryland, with its principal place of business in Montgomery County, Maryland. ECF 76-1 ("Proposed TAC"), ¶ 4. It is a "woman-owned, independent, and local residential real estate brokerage firm" founded in 2014 by Donna Kerr. *Id.* ¶ 14. Individual Defendants are all residents of Montgomery County, Maryland. *Id.* ¶¶ 5–8. Compass is an LLC formed in the State of Delaware, with its principal place of business in New York. *Id.* ¶ 9.

DKG's business is based on extensive marketing and client referrals. *Id.* ¶ 17. Since 2000, DKG has invested significant expenditures into marketing and creating past, existing, and prospective client lists. *Id.* ¶ 18. Plaintiff considers these lists confidential and proprietary information and contends that they constitute trade secrets. *Id.* Between 2014 and June 27, 2022, DKG spent $1,657,045.27 on marketing to develop its client lists. *Id.* ¶¶ 34–35. In or about late 2016, DKG decided to bring in "a team of employee-type agents" to serve its significant and growing client base. *Id.* ¶ 19. DKG hired each Individual Defendant as part of that expansion. *Id.* ¶¶ 21, 25, 28, 31.

Kirn and Perez worked for DKG as employees, while Fitzgerald and Goelman were independent contractors. *Id.* ¶ 2. Kirn began working for DKG as Lead Listing Account Manager on April 3, 2017, and signed an employee compensation package. *Id.* ¶¶ 22–23. Perez also signed

---

[2]    The factual background is drawn from the proposed Third Amended Complaint, ECF 76-1 ("Proposed TAC"), at issue in both pending Motions, *see* ECF 76 & 77. When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

a compensation package and "agreed to an arrangement with a path to joining the Listing Team as a Junior Account Manager in Training." *Id.* ¶¶ 28–29. Fitzgerald and Goelman signed Independent Contractor Agreements ("ICAs") with DKG, which included non-solicitation and confidentiality clauses. *Id.* ¶¶ 26–27, 31–33.

On February 9, 2021, Dominique Thompson, a Strategic Growth Manager for Compass, was assigned to recruit Goelman. *Id.* ¶ 37. Thompson was in talks with Goelman and Fitzgerald throughout 2021 and 2022 to bring them to Compass. *Id.* ¶¶ 38–40.

In or around January 2022, Kirn met with Kerr to discuss her position at DKG, seeking to transition from an employee to an independent contractor. *Id.* ¶¶ 41–42. Kerr told Kirn that if she were to become an independent contractor, DKG would no longer provide her with client leads and she would have to develop her own client base. *Id.* ¶ 43.

Plaintiff alleges that, due in part to the conversation between Kirn and Kerr, Individual Defendants engaged in a scheme to leave DKG for Compass and take DKG's proprietary client leads with them. *Id.* ¶ 44. On April 4, 2022, Goelman generated client lists for Thompson from DKG's customer relationship management ("CRM") tool. *Id.* ¶¶ 45–46. Plaintiff alleges that Goelman lacked permission to generate clients lists and had asked a former DKG employee to do it for her. *Id.* ¶¶ 46–47.

Later that month, Individual Defendants met with Thompson in Bethesda, Maryland, where Thompson encouraged them to leave DKG and join Compass. *Id.* ¶¶ 48–51. Thompson followed the meeting up with an email to Individual Defendants, laying out the steps for providing Compass with DKG's leads, as well as the financial compensation they would receive for doing so. *Id.* ¶¶ 52–53. Individual Defendants met virtually with Thompson on May 11, 2022, again to discuss recruitment, and Compass sent ICAs to Individual Defendants the next day. *Id.* ¶¶ 55–56. Before

3

signing the ICAs, Individual Defendants corresponded with Thompson over email regarding the proper way to solicit DKG clients. *Id.* ¶¶ 58–59.

Individual Defendants signed their ICAs with Compass on May 17, 2022, but dated them June 28, 2022—the date they contemporaneously resigned from DKG and formed the brokerage group "the Phoenix Group of Compass." *Id.* ¶¶ 66, 82–83. Before resigning from DKG, Kirn and Perez generated various spreadsheets of client leads without permission from DKG and sent them to Compass. *Id.* ¶¶ 76–77. Fitzgerald and Goelman also participated in the solicitation of DKG clients. *Id.* ¶¶ 84–87, 89–91, 93, 97–100. Individual Defendants spent the period between May 17, 2022, and June 28, 2022, soliciting DKG clients and leads, including by text, telephone, email, and in-person meetings with existing DKG clients. *Id.* ¶ 67. These solicitations were undertaken with encouragement from Compass, *id.* ¶ 75, and caused the value of DKG's client lists to depreciate, *id.* ¶ 68. Individual Defendants, supported and counseled by Compass, solicited at least seven clients who had signed listing agreements with DKG, and Defendants provided them with draft terminations of their listing agreements, which the clients signed and submitted to DKG. *Id.* ¶ 156. Individual Defendants also solicited clients who had signed two buyer agency agreements: in one instance, the clients ratified a purchase contract with Compass while their agreement with DKG was still in effect; and in the other, the client terminated the agreement with DKG four days before ratifying a purchase contract with Compass. *Id.* ¶¶ 183–87, 203–08.

Additionally, while working at DKG, one or more of the Individual Defendants accessed DKG's calendar and deleted or altered numerous events involving DKG clients, referrals, and leads "in an effort to hide and destroy evidence of" the alleged scheme. *Id.* ¶¶ 218, 220–21.

On or about July 5, 2022, after leaving DKG and in violation of her ICA, Goelman "confirmed that she had hired" Andrea Bramson, a photographer with DKG who had resigned less

than three weeks prior to pursue a career as a freelance photographer. *Id.* ¶ 119. DKG had hired Bramson in 2016, purchased equipment for her, and expended time and money training her. Bramson's training included DKG's signature "twilight photography" technique, which she now uses to promote herself without DKG's consent. *Id.* ¶¶ 120–24. Bramson wiped the content of her DKG-owned laptop before leaving her position. *Id.* ¶ 219.

Plaintiff further alleges that Individual Defendants bypassed the standard DKG procedure of reporting client, real estate, and meeting information in the CRM tool in order to facilitate bringing actual and prospective DKG clients over to Compass. *Id.* ¶¶ 167–216. Defendants, individually and in concert, stole or attempted to steal over one million dollars' worth of commissions, specifically by downloading, copying, and exporting client lists and other confidential information from DKG's server. Defendants continue to use and misappropriate DKG's confidential information for their own commercial gain. *Id.* ¶¶ 224–26. Individual Defendants, as the Phoenix Group of Compass, are now misrepresenting to the public that a number of DKG's past sales and closings were actually completed Compass. *Id.* ¶¶ 227–35. Plaintiff alleges that Defendants' actions were done with actual malice toward DKG and Kerr, *id.* ¶¶ 246–47, noting that Compass has recruited DKG agents in the past, including one who also improperly took client lists and leads with him, *id.* ¶¶ 237–45.

## II.    PROCEDURAL BACKGROUND

On July 27, 2022, Plaintiff filed its initial Complaint against Individual Defendants in the Circuit Court for Montgomery County, Maryland. ECF 1, ¶ 1. On September 19, 2022, Individual Defendants filed a motion to dismiss the initial Complaint, which was granted in part and denied in part on December 29, 2022. ECF 77-2 & 80-1. On January 20, 2023, Plaintiff filed its First

Amended Complaint, adding Compass as a defendant, ECF 6, and on February 28, 2023, Plaintiff filed its Second Amended Complaint, ECF 7.

On March 8, 2023, Defendants removed the case to the U.S. District Court for the District of Maryland. ECF 1. Plaintiff filed a notice of intent to file a motion for leave to amend on October 19, 2023, ECF 49, following a mediation that did not result in settlement. On January 5, 2024, the Court conducted a teleconference to set a briefing schedule for Plaintiff's Motion to Amend. ECF 73 & 74. The briefing schedule set by the Court contemplated Defendants' arguments that Plaintiff's proposed amendment fails to state claims for relief and permitted Defendants to file a surreplies in opposition to Plaintiff's Motion to Amend. *See* ECF 74.

Plaintiff filed its Motion to Amend on January 8, 2024, attaching its proposed Third Amended Complaint ("Proposed TAC"). ECF 76.[3] On January 22, 2024, Individual Defendants filed a response in opposition to Plaintiff's Motion to Amend and Motion to Dismiss the Third Amended Complaint, arguing that certain counts in the Proposed TAC fail to state claims for relief. ECF 77. The same day, Compass filed a separate response in opposition to Plaintiff's Motion to Amend. ECF 78. On February 5, 2023, Plaintiff filed replies to Defendants' respective oppositions to its Motion to Amend and a response in opposition to Individual Defendants' Motion to Dismiss. ECF 79 & 80. On February 16, 2024, Defendants filed surreplies. ECF 81 & 82.

---

[3]      Defendants have, at multiple points, expressed frustration with what they contend to be a lack of clarity in Plaintiff's pleadings as to which counts are asserted against which Defendants. ECF 77 at 6; ECF 78 at 2 n.1; ECF 82 at 1–3. The Court construes the claims in the Proposed TAC as follows:

- Count I is asserted against defendants Fitzgerald and Goelman, *see* TAC, ¶¶ 249, 251, 253;
- Counts II, III, IV, & V are asserted against all Defendants, *see id.* ¶¶ 255–91;
- Count VI is asserted against defendant Goelman, *see id.* ¶¶ 293–97;
- Counts VII, VIII, IX & X are asserted against all Defendants, *see id.* ¶¶ 298–331;
- Count XI is asserted against Individual Defendants, *see* ECF 76 at 2; and
- Count XII is asserted against defendants Kirn, Perez, and Compass, *see* ECF 76 at 2.

III.     **STANDARD OF REVIEW**

### A.  Motion to Amend

A party's amendment of its pleading is governed by Rule 15 of the Federal Rules of Civil

Procedure. Rule 15 states that "[a] party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or (B), if the pleading is one to which a responsive pleading is required,

21 days after service of a responsive pleading or 21 days after service of a [Rule 12] motion,

whichever is earlier." Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only

with the opposing party's written consent or the court's leave. The court should freely give leave

when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fourth Circuit has endorsed a liberal

approach to granting motions to amend, interpreting Rule 15(a) "to provide that leave to amend a

pleading should be denied only when the amendment would be prejudicial to the opposing party,

there has been bad faith on the part of the moving party, or the amendment would have been futile."

*Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (internal citations omitted).

### B.  Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual

allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007). Under Rule 8(a)(2), a complaint must contain "a short and plain statement

of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give

the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*,

550 U.S. at 555 (internal quotation marks and citation omitted). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A

complaint need not include "detailed factual allegations," but it must set forth "enough factual

matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up).

Generally, a court may not consider extrinsic evidence in ruling on a 12(b)(6) motion to dismiss. *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 602, 611 (D. Md. 2011). However, if "a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Id.* (quoting *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)) (internal quotations omitted). A document is considered integral when it "by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found.*, 794 F. Supp. 2d. at 611 (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)).

## IV.     MOTION TO AMEND

In its Motion to Amend, Plaintiff request leave to file a Third Amended Complaint. Plaintiff's proposed amended complaint adds two new claims for fraudulent concealment and

unjust enrichment and changes the conversion claim into one for trespass to chattels. *See* Redlined TAC, ECF 76-2. It also adds mention of a seventh listing agreement that Defendants allegedly misappropriated. *Id.* ¶ 156(g). Plaintiff also expands on its other claims, though it only does so with facts already alleged in its prior pleadings. *See id.* ¶¶ 253–86, 292–97, 299, 310–16, 321.

### A. Prejudice

Courts consider the character and timing of a proposed amendment to determine whether it would be prejudicial to the opposing party. *Laber*, 438 F.3d at 427. A prejudicial amendment "is one that 'raises a new legal theory that would require the gathering and analysis of facts not already considered . . . and is offered shortly before or during trial.'" *Id.* (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). An amendment that instead "adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred" would not be deemed prejudicial. *Id.* (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)).

The parties have already engaged in some discovery. *See* ECF 35 & 38. Nonetheless, even after discovery has started, a motion for leave to amend is not considered prejudicial when it "does not significantly change the substance of the case . . . ." *Nicole v. Holy Cross Hosp. of Silver Spring, Inc.*, Civ. No. AW-04-3039, 2005 WL 8174699, at *2 (D. Md. Sept. 8, 2005) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1986)). Defendants may have to conduct additional discovery in response to the new claims for trespass to chattels, fraudulent concealment, and unjust enrichment, but the new claims do not significantly alter the substance of the case. Apart from a seventh allegedly breached listing agreement, Proposed TAC ¶ 156(g), the proposed amendment does not allege any new facts that were absent from Plaintiff's prior pleadings, *see* ECF 76-2. Any additional discovery called for by the new claims is likely to be "limited in scope"

and would not cause undue prejudice. *Nicole*, 2005 WL 8174699, at *2 (citing *Edwards*, 178 F.3d at 243, and *Robinson v. Geo. Licensing Co.*, 173 F. Supp. 2d 419, 426 (D. Md. 2001)). Moreover, discovery deadlines and trial dates have not been set.

The Court thus finds that the Proposed TAC would not unduly prejudice Defendants.

**B. Bad Faith**

The longer a party waits to file a motion for leave to amend a pleading, the more likely a court will find the party acting in bad faith. *See Laber*, 438 F.3d at 427 (citing *Adams v. Gould*, 739 F.2d 858, 864 (3d Cir. 1984)). "Diligence in filing [a] motion to amend . . . dispel[s] [an] inference of bad faith," although a court should not deny a motion to amend simply to punish a party for being dilatory. *Id.* at 427–28.

Plaintiff filed its Second Amended Complaint in state court on February 28, 2023, ECF 7, and Compass removed the case to this Court on March 8, 2023, ECF 1. Although Plaintiff did not file its Motion to Amend until January 8, 2024, ECF 76 at 5, there is a satisfactory explanation for Plaintiff's delay. Following a case management conference, this matter was referred for mediation in June 2023, ECF 29, and the mediation conference was conducted in August 2023, ECF 47. The parties filed a joint status report in September 2023 stating that Plaintiff intended to seek leave to amend its pleading to add "additional legal theories of liability and additional facts learned in discovery . . . ." ECF 48 at 4. Pursuant to the Case Management Order, ECF 11, Plaintiff filed a notice of intent to file the Motion to Amend in October 2023, ECF 49. A teleconference was then scheduled for November 15, 2023, to discuss Plaintiff's notice, ECF 50, but was cancelled when this case was transferred from Judge Chuang to the undersigned, *see* ECF 67. On December 18, 2023, Plaintiff requested a teleconference with the Court, *id.*, which was held on January 5, 2024,

10

ECF 73. Following the teleconference, the Court set a briefing schedule for the Motion to Amend. ECF 74. Plaintiff timely filed the Motion to Amend on January 8, 2024. ECF 76.

The Court finds no undue delay in Plaintiff's filing, nor any other indicium of bad faith.

### C. Futility

"Leave to amend . . . should [] be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510 (citing *Davis*, 615 F.2d at 613). A court may "deny leave to amend when it is clear that a claim cannot withstand a Rule 12(b)(6) motion." *Fox v. Statebridge Co., LLC*, Civ. No. SAG-21-01972, 2023 WL 1928224, at *2 (D. Md. Feb. 10, 2023) (citing cases).

Defendants argue that the Proposed TAC is futile with respect to its added claims for trespass to chattels (Counts V), fraudulent concealment (Count XI), and unjust enrichment (Count XII) because they are preempted by Plaintiff's claim for misappropriation of trade secrets in Count IV. ECF 77 at 11; ECF 78 at 4–6.

The Maryland Uniform Trade Secrets Act ("MUTSA") "displaces conflicting tort, restitutionary, and other law of this State providing civil remedies for misappropriation of a trade secret." Md. Code Ann., Com. L. § 11-1207(a). A trade secret, as defined in MUTSA, is:

> Information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

§ 11-1201(e).

Courts in this District have held that MUTSA "preempts only claims based on the misappropriation of trade secrets, not other confidential information." *Hardwire, LLC v. Ebaugh*, Civ. No. JKB-20-0304, 2020 WL 5077469, at *4 (D. Md. Aug. 27, 2020) (citing cases); *see also Brightview Grp., LP v. Teeters*, Civ. No. SAG-19-2774, 2021 WL 1238501, at *21 (D. Md. Mar. 29, 2021) (same). Furthermore, "plaintiffs may plead in the alternative under the liberal federal pleading standards that misappropriated confidential information is not a trade secret, and as such, common law claims relating to such confidential information are not preempted by MUTSA." *Hardwire*, 2020 WL 5077469, at *4 (citing *Telogis, Inc. v. InSight Mobile Data, Inc.*, Civ. No. PWG-14-563, 2014 WL 7336678, at *5 (D. Md. Dec. 19, 2014), and *Swed. Civ. Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 802 (D. Md. 2002)); *see also Philips N. Am. LLC v. Hayes*, Civ. No. ELH-20-1409, 2020 WL 5407796, at *17 (D. Md. Sept. 9, 2020) (same); *Structural Pres. Sys., LLC v. Andrews*, Civ. No. MJG-12-1850, 2013 WL 3820023, at *5 (D. Md. July 23, 2013) (same). This approach to MUTSA preemption comports with the liberal pleading standards established by the Federal Rules of Civil Procedure, namely that "a party may set out [two] or more statements of a claim . . . alternatively . . . . If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient . . . [and a] party may state as many separate claims . . . as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(2)–(3).

The Proposed TAC states that "[s]ince as early as 2000, DKG . . . [has] invested significant funds into its business, marketing, leads and client list, cultivating a confidential set of past, existing and prospective client and/or lead lists, which constitute trade secrets, *and other confidential and proprietary information* (the 'Confidential Information')." TAC, ¶ 18 (emphasis added). Plaintiff's claims for trespass to chattels, fraudulent concealment, and unjust enrichment are premised on the misuse or misappropriation of the Confidential Information, which may

12

appropriately be construed in the alternative as non-trade secret confidential and proprietary information. *Id.* ¶¶ 18, 288–290, 334–38, 347–48.

To the extent Counts V, XI, and XII are based on misappropriation of trade secrets, they are displaced by the MUTSA. *See* Md. Code Ann., Com. L. § 11-1207(a). However, it is apparent from the Proposed TAC, and Plaintiff confirms in its reply in support of the Motion to Amend, that the trespass to chattels and unjust enrichment claims in Counts V and XII are "based on non-trade secret confidential information" and are "pleaded in the alternative to the MUTSA claim" in Count IV. ECF 79 at 4. The fraudulent concealment claim in Count XI "is not primarily or exclusively based on misappropriation or theft" but is instead based on Defendants' alleged failure to disclose material facts to Plaintiff with the intent to defraud it.[4] ECF 80 at 13–14. Defendants' arguments that Counts V, XI, and XII are preempted is without merit. *See Aarow Elec. Sols. v. Tricore Sys., LLC*, 693 F. Supp. 3d 525, 538 (D. Md. 2023) ("In short, Aarow may pursue its trade secret claims under the MUTSA . . . and its non-trade secret claims under Maryland common law."). Thus, Counts V, XI, and XII of the Proposed TAC are not futile.

Because the Proposed TAC would not unduly prejudice Defendants, is not being presented in bad faith, and is not futile, Plaintiff's Motion to Amend shall be granted.

---

[4]     To prevail on a claim of fraudulent concealment, a plaintiff must show "1) that the defendant owed a duty to the plaintiff to disclose a material fact, 2) that the defendant failed to disclose that fact, 3) that the defendant intended to defraud or deceive the plaintiff, 4) that the plaintiff took action in justifiable reliance on the concealment, and 5) that the plaintiff suffered damages as result of the defendant's concealment." *Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 820 (D. Md. 2005).

## V.      MOTION TO DISMISS

Individual Defendants move to dismiss Counts III and V of the Third Amended Complaint, as well as Plaintiff's requests for attorney's fees.[5]

### A.  Count III – Tortious Interference[6]

Plaintiff asserts claims for tortious interference in Count III of the Third Amended Complaint, alleging that Individual Defendants interfered with at least seven listing agreements,[7] at least two buyer agent agreements, and various prospective client relationships. TAC, ¶¶ 264–72. Individual Defendants argue that Count III fails to state a claim for relief because (1) the listing agreements were not valid contracts and (2) even if they were valid, Individual Defendants were parties to the alleged contracts and economic relationships. ECF 77 at 6–9; ECF 82 at 5–6.

---

[5]      The Court's Letter Order setting the briefing schedule contemplated that, in opposition to Plaintiff's Motion to Amend, Defendants would present any arguments that the Proposed TAC fails to state claims for relief. *See* ECF 74. The Motion to Dismiss is only brought by Individual Defendants, *see* ECF 77, but Compass states in both of its filings that it adopts all arguments by Individual Defendants in their Motion to Dismiss and surreply, ECF 78 at 4 n.3; ECF 81 at 2 n.2.

[6]      Plaintiff asserts a single claim in Count III for "Tortious Interference with Contracts and Prospective Economic Advantage," which are two separate torts, *see, e.g.*, *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 539 n.3 (D. Md. 2006), and are thus construed as separate claims.

[7]      A listing agreement is "an agreement between a property owner and an agent, whereby the agent agrees to try to secure a buyer or tenant for a specific property at a certain price and terms in return for a fee or commission." *Listing Agreement*, *Black's Law Dictionary* (12th ed. 2024). Listing agreements are governed by contract law. *See, e.g.*, *Justin Winter & Assocs., LLC v. McIver*, No. CV 8:17-01620-MGL, 2017 WL 6367429 (D.S.C. Dec. 12, 2017); *Picnics, Inc. v. Holland*, 939 F. Supp. 2d 583 (S.D.W. Va. 2013).

Plaintiff's listing agreements are at the center of many of its claims, including its tortious interference claim. TAC, ¶¶ 263–77. The Court finds that they are integral to Plaintiff's claims, *see Chesapeake Bay Found.*, 794 F. Supp. 2d. at 611 (citation omitted), and may appropriately be considered in deciding Individual Defendants' Motion to Dismiss.

1.   **Tortious Interference with a Contract**

To state a plausible claim for tortious interference with a contract under Maryland law, Plaintiff must allege the "(1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff." *Crussiah v. Inova Health Sys.*, Civ. No. TDC-14-4017, 2015 WL 7294368, at *10 (D. Md. Nov. 19, 2015) (quoting *Fowler v. Printers II, Inc.*, 598 A.2d 794, 802 (Md. Ct. Spec. App. 1991)). In Maryland, "a contract may be so vague and uncertain as to price or amount as to be unenforceable." *Crete Carrier Corp. v. Sullivan & Sons, Inc.*, Civ. No. ELH-21-328, 2022 WL 313865, at *15 (D. Md. Feb. 1, 2022) (quoting *Schloss v. Davis*, 131 A.2d 287, 290 (Md. 1956)). However, "a contract that lacks a specific price can be enforced if the party seeking enforcement of the contract can provide the court with 'a practicable method by which the amount can be determined by the court without any new expression by the parties themselves.'" *Id.* (quoting *Hanna v. Baugess*, 430 A.2d 104, 108 (Md. Ct. Spec. App. 1981)). Courts have found terms like "fair market value, reasonable value, or current market value" to be sufficiently certain to render a contract enforceable. *Id.* (cleaned up).

Plaintiff alleges that Defendants tortiously interfered with certain listing agreements and buyer agent agreements by, *inter alia*, encouraging sellers and buyers under these agreements to terminate their relationships with DKG and enter agreements with the Phoenix Group of Compass, which caused Plaintiff to lose expected commissions. The two listing agreements provided to the Court, one by each party, ECF 77-3 & 80-2, each show a listing price of "TBD" (to be determined). According to the Third Amended Complaint, the other listing agreements were also indeterminate as to price. TAC, ¶ 158. The term "TBD" fails to provide any guidepost by which the Court might

determine any agreed-upon price. To the contrary, it suggests that the parties had *not* come to any agreement on price. Because the listing agreements are uncertain as to an essential term, price,[8] the Court finds them to be unenforceable. The listing agreements thus cannot provide a basis for a claim for tortious interference with a contract.

However, Individual Defendants do not contest Plaintiff's allegation that the two buyer agent agreements, TAC, ¶ 264, were valid contracts. *See* ECF 80 at 7–8; ECF 82 at 5 ("DKG's claim for tortious interference with contractual relations must fail as to the seven (7) listing agreements because they are not valid contracts.").

As a general matter, under Maryland law, a party cannot tortiously interfere with his own contract, nor can a party's agent while acting within the scope of the agency relationship. *E.g.*, *Goode v. Am. Veterans, Inc.*, 874 F. Supp. 2d 430, 447 n.12 (D. Md. 2012) (citing *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 313 (Md. Ct. Spec. App. 1995)); *see also Dobkin v. Johns Hopkins Univ.*, Civ. No. HAR-93-2228, 1994 WL 146760, at *10 (D. Md. Jan. 25, 1994) (noting that this principle also extends to a party's employee acting within the scope of his employment) (citations omitted). Whether an individual has acted in the scope of his agency relationship is a question of fact. *E.g.*, *Young v. H.R.B.-Singer, Inc.*, Civ. No. JRM-83-390, 1983 WL 30301, at *6 (D. Md. June 8, 1983). An individual acts outside that scope where he "act[s] out 'of personal motive and without intent to further the interests of their corporate principal.'" *Bleich v. Florence Crittenton Servs. of Balt.*, 148, 632 A.2d 463, 475 (Md. Ct. Spec. App. 1993) (quoting

---

[8]   Plaintiff contends that price is not an essential term in a listing agreement. This Court does not agree. *See Alaimo v. Tsunoda*, 29 Cal. Rptr. 806, 808–10 (Cal. Ct. App. 1963) (finding a listing agreement where the price of the land had yet to be determined to be an unenforceable agreement to agree at some point in the future); *see also Black's Law Dictionary* (defining a listing agreement as "an agreement . . . to secure a buyer or tenant for a specific property *at a certain price*") (emphasis added). Maryland courts generally do not enforce "agreements to agree." *See Macsherry v. Sparrows Point, LLC*, Civ. No. ELH-15-22, 2017 WL 3315262, at *21 (D. Md. Aug. 3, 2017) (citing cases).

*George A. Fuller Co. v. Chi. Coll. of Osteopathic Med.*, 719 F.2d, 1326, 1333 (7th Cir.1983)); *see also Dobkin*, 1994 WL 146760, at *10 (permitting a tortious interference claim to proceed against two individual defendants where the plaintiff alleged that they acted out of a personal motive).

According to the Third Amended Complaint, the two buyer agent agreements at issue involved clients who were brought to DKG by defendants Perez and Fitzgerald, TAC, ¶¶ 183, 205, and it was Perez and Fitzgerald who brought those same clients to Compass, *id.* ¶¶ 186, 208. As noted, Perez was an employee of DKG, while defendant Fitzgerald was an independent contractor. *Id.* ¶ 2. Plaintiff clearly asserts that Individual Defendants were acting outside of the scope of their agency relationship, alleging that they acted "for the purposes of securing for themselves commissions that would have otherwise gone to DKG." TAC, ¶ 274. Individual Defendants thus cannot be considered parties to the buyer agent agreements.

Accordingly, Plaintiff's claim for tortious interference with a contract shall be dismissed with regard to the listing agreements, but not as to the buyer agent agreements.

## 2.  Tortious Interference with a Prospective Economic Advantage

To state a plausible claim for tortious interference with a prospective economic advantage under Maryland law, Plaintiff must allege "1) intentional and willful acts; 2) calculated to cause damage to [it] in its lawful business; 3) done with an unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and 4) actual damage and loss resulting." *180s, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 639 (D. Md. 2009) (quoting *Audio Visual Assocs., Inc. v. Sharp Elec. Corp.*, 210 F.3d 254, 261 (4th Cir. 2000)). "An action for this type of interference is predicated on the existence of three parties— the plaintiff, the third party with whom the plaintiff has some sort of [prospective] business relationship,[] and the alleged tortfeasor." *Runkle v. O'Neil*, Civ. No. CCB-06-2326, 2007 WL

417373, at *7 (D. Md. Feb. 7, 2007) (citing *K & K Mgmt., Inc. v. Lee*, 557 A.2d 965, 973, (Md. 1989)).

Here, Plaintiff alleges that Individual Defendants—encouraged, impelled, and counseled by Compass—interfered with its business relations by purposefully inducing prospective clients to terminate their relationships with DKG for Compass, and that they did so "in violation of [their] fiduciary, statutory, common law, ethical and contractual duties and obligations to DKG." TAC ¶¶ 263–77. These actions caused DKG to lose many of its cultivated business relationships and expected commissions. *Id.* These allegations are sufficient to state a plausible claim of tortious interference with a prospective economic advantage. *See Sol v. M&T Bank*, --- F. Supp. 3d ----, 2024 WL 327086, at *12 (D. Md. Jan. 29, 2024) (finding a plausible tortious interference with a prospective economic advantage claim where plaintiff alleged "what business opportunities were lost, to whom those business opportunities were steered to, and what the unlawful, malicious act was") (citing *Allied Fire Prot., Inc. v. Thai*, Civ. No. PWG-17-551, 2017 WL 4354802, at *10 (D. Md. Oct. 2, 2017)). Further, because the seven listing agreements were not valid contracts but were rather "agreements to agree" (in other words, prospective contracts), they are more appropriately protected by this tort. *See Baron*, 471 F. Supp. 2d at 539 n.3 (citing Restatement (Second of Torts) § 766B).

Accordingly, Plaintiff's tortious interference with a prospective economic advantage claim shall not be dismissed.

### B.  Count V – Trespass to Chattels

Individual Defendants argue that Plaintiff fails to state a claim of trespass to chattels in Count V because (1) trespass to chattels does not protect most intangible property rights, (2) Plaintiff does not allege that the interference with its client lists was unauthorized, (3) Plaintiff

does not allege it was ever deprived of full access to the client lists, and (4) Plaintiff cannot show

how the client lists were impaired or damaged. ECF 77 at 9–11.

"Under Maryland law, trespass to chattels occurs when a person intentionally uses or

intermeddles with a chattel in possession of another resulting in the chattel being 'impaired as to

its condition, quality, or value.'" *InfoTek Corp. v. Preston*, 626 F. Supp. 3d 885, 894 (D. Md. 2022)

(quoting *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 679, 697 (D. Md. 2011)). To

determine the seriousness of the interference, the court must consider:

> (1) the extent and duration of the actor's exercise of dominion or
> control; (2) the actor's intent to assert a right in fact inconsistent with
> the other's right of control; (3) the actor's good faith; (4) the extent
> and duration of the resulting interference with the other's right of
> control; (5) the harm done to the chattel; and (6) the inconvenience
> and expense caused to the other.

*Diamond v. T. Rowe Price Assocs., Inc.*, 852 F. Supp. 372, 411 (D. Md. 1994) (citing *Staub v.*

*Staub*, 376 A.2d 1129, 1132 (Md. Ct. Spec. App. 1977)).

## 1.   Whether the Property Was Protected

The property at the center of Plaintiff's trespass to chattels claim is the "lists of clients and

prospective clients, Confidential Information, and its CRM tool (Sierra Interactive)." TAC, ¶ 288.

"In general . . . Maryland only recognizes conversion claims that involve the type of

intangible property rights that are merged or incorporated into a transferable document." *Gallardo*

*v. FedEx Kinko's Off. & Print Servs., Inc.*, Civ. No. JFM-08-0392, 2008 WL 2143011, at *3 (D.

Md. 2008) (cleaned up).[9] Emails, for instance, are viable property for a trespass to chattels claim

because they are reducible to paper. *Simone v. VSL Pharm., Inc.*, Civ. No. TDC-15-1356, 2017

---

[9]      "Because the distinction between trespass [to chattels] and conversion relates to the degree of a
defendant's interference with plaintiff's property, not the definition of 'property,' however, it is fair to
assume that the same requirements for intangible property rights apply to both torts." *Gallardo*, 2008 WL
2143011, at *3 n.6.

WL 66323, at *9 (D. Md. Jan. 5, 2017). Where "the only issue is whether certain specific items are subject to [a trespass to chattels] claim," it is not necessary at the motion to dismiss stage to "parse the claim that finely" to determine which specific pieces of property are protected and which are not. *Id.* at *6.

Here, viewed in the light most favorable to Plaintiff, the allegations in the Third Amended Complaint that Defendants used Plaintiff's CRM tool to misappropriate Plaintiff's client lists and Confidential Information support a reasonable inference that this information was reduced to physical or electronic writing. Therefore, such property may be protected by the tort of trespass to chattels.

### 2.   Whether Defendants' Conduct Was Unauthorized

To state a claim for trespass to chattels, the plaintiff must allege that the defendant's interference with the property was unauthorized. *See State v. Roshschin*, 130 A.3d 453, 459 (Md. 2016). That Individual Defendants were employed by DKG at the time they downloaded the chattel does not necessarily make them authorized to do so. *See OSI Sys., Inc. v. KM-Logix, LLC*, No. 1:20-CV-01577, 2022 WL 2292725, at *3 (E.D. Va. June 24, 2022) (granting summary judgment against plaintiff's trespass to chattels claim in part because "no [] employees accessed any of the premium or administrative areas [of the website] where access was never authorized"). Plaintiff alleges throughout the Third Amended Complaint that Individual Defendants, even if employees at the time, improperly obtained confidential and proprietary information and did so by violating fiduciary, statutory, ethical and contractual obligations. TAC, ¶¶ 45–46, 57, 69, 76 n.2, 92, 282, 288–90. These allegations support a reasonable inference that Individual Defendants' interference with Plaintiff's chattel was unauthorized.

### 3.   Whether Defendants Interfered with the Chattel

A claim for trespass to chattels requires "an intentional use or intermeddling with the chattel in possession of another." *EDI Precast, LLC v. Carnahan*, 982 F. Supp. 2d 616, 629 (D. Md. 2013) (quoting *United States v. Arora*, 860 F. Supp. 1091 (D. Md. 1994), *aff'd*, 56 F.3d 62 (4th Cir. 1995)). Unlike conversion, trespass to chattels does not require "the exercise of unauthorized dominion and control to the complete exclusion of the rightful possessor." *Thomas v. Artino*, 723 F. Supp. 2d 822, 834 (D. Md. 2010) (quoting *Yost v. Early*, 589 A.2d 1291, 1303 (Md. Ct. Spec. App. 1991)); *see also Gallardo*, 2008 WL 2143011, at *3 (citing cases to illustrate the distinction between trespass to chattels and conversion). Accordingly, Plaintiff need not plead that Individual Defendants had exclusive control over its chattel in order to state a plausible trespass to chattels claim. *See Hardware*, 2020 WL 5077469, at *6 (finding a plausible claim of trespass to chattels where the individual defendant improperly "[took] pictures of the [plaintiff's] tested bridge armor parts," to the extent it did not constitute trade secrets under MUTSA). Plaintiff's allegations that Individual Defendants interfered with its property by stealing its client lists and other confidential information, TAC, ¶¶ 45–46, 57, 69, 76 n.2, 92, 282, 288–90, are sufficient.

### 4.  Whether the Chattel Was Impaired or Harm

"In Maryland, the measure of damages for trespass to a chattel is the diminished value of the chattel which results from the damage actually sustained from the time of taking until the return of the goods." *Staub*, 376 A.2d at 1133 (citing *Strasburger v. Barber*, 38 Md. 103, 108 (Md. 1873)). Here, Plaintiff alleges that the value of its client and prospective client lists has diminished because Individual Defendants misappropriated Plaintiff's client lists and other confidential information and shared them with Compass, thus depriving Plaintiff of the full value of the information. TAC, ¶¶ 288–91.

In sum, Plaintiff has stated a plausible claim for trespass to chattels under Maryland law. Count V shall not be dismissed.

### C.  Attorney's Fees

Individual Defendants seek to dismiss Plaintiff's request for attorney's fees in connection with Counts I, II, III, V, VI, VII, VIII, IX, and XI of the Third Amended Complaint. ECF 77 at 11–13.[10]

Generally, Maryland courts do not award attorney's fees to the prevailing party. *Iheakanwa v. Saks Fifth Ave., LLC*, Civ. No. GLS-21-2930, 2022 WL 3919673, at *10 (D. Md. Aug. 30, 2022) (citing *Friolo v. Frankel*, 456, 942 A.2d 1242, 1250 (Md. 2008)). Attorney's fees may only be awarded when one of the following criteria is met:

> (1) the parties to a contract agree in that contract to pay attorney's fees; (2) a statute allows such fees; (3) wrongful conduct of the defendant forces the plaintiff into litigation with a third party; (4) the plaintiff is forced to defend malicious prosecution; or (5) they are considered as an element of a punitive damages award.

*Biktasheva v. Red Square Sports, Inc.*, 366 F. Supp. 2d 289, 296 (D. Md. 2005) (citing *St. Luke Evangelical Lutheran Church, Inc. v. Smith*, 568 A.2d 35, 43 (Md. 1990)).

For the claims asserted in Counts II, III, V, VI, VII, VIII, and XI, Plaintiff requests attorney's fees as a part of a punitive damages award, *see* TAC at 58–59, 61–62, 65–66, 68–70, 75, as permitted by Maryland law. "In a tort case where punitive damages are permitted, in order to obtain such an award a plaintiff must prove actual malice or its legal equivalent." *Schaefer v. Miller*, 587 A.2d 491, 492 (Md. 1991) (quoting *Siegman v. Equitable Trust Co.*, 297 A.2d 758, 760 (Md. 1972)). Here, Plaintiff alleges that Defendants acted with malice, including by soliciting

---

[10]     Individual Defendants do not challenge Plaintiff's request for attorney's fees under Count IV (MUTSA violation), and they note that Plaintiff does not seek attorney's fees for Counts X (injunctive relief) and XII (unjust enrichment). ECF 77 at 12.

DKG agents and clients in violation of Defendants' "fiduciary, statutory, ethical, and contractual duties and obligations." TAC, ¶¶ 246–47. In total, the allegations regarding Individual Defendants' conduct are sufficient to state plausible claims for punitive damages, and attorney's fees may constitute an element of a punitive damages award. *See Biktasheva*, 366 F. Supp. 2d at 296.

Plaintiff also requests attorney's fees in Count I, its claim for breach of contract, and Count IX, its claim for declaratory relief. TAC at 57, 71. Plaintiff claims that Individual Defendants breached their ICAs and employment contracts. *Id.* ¶¶ 80, 254. But there is no indication that these contracts contain any provision for attorney's fees, as required under Maryland law for attorney's fees to be awarded in breach of contract cases. Furthermore, Maryland law does not permit attorney's fees awards in declaratory judgment actions, except under rare circumstances that do not apply here. *See Nova Rsch., Inc. v. Penske Truck Leasing Co.*, 952 A.2d 275, 281–82 (Md. 2008) (permitting attorney's fees award where an insurance company seeks a declaratory judgment on behalf of the insured) (citing *St. Luke*, 568 A.2d at 45). Accordingly, Plaintiff's request for attorney's fees will be dismissed as to Counts I and IX.

## VI.    CONCLUSION

Plaintiff's Motion for Leave to File a Third Amended Complaint shall be GRANTED, and Individual Defendants' Motion to Dismiss shall be GRANTED IN PART and DENIED IN PART. Plaintiff's tortious interference with a contract claim based on the listing agreements and requests for attorney's fees in Counts I and IX shall be dismissed without prejudice.

A separate Order shall follow.

  8/12/24                                                   /S/
Date                                                 Matthew J. Maddox
                                                     United States District Judge