THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| LIFESTYLE REALTY, LLC,<br>d/b/a Donna Kerr Group,<br><br>    Plaintiff / Counter-Defendant,<br><br>v.<br><br>SUSAN KIRN, *et al.*,<br><br>    Defendants / Counter-Plaintiffs. | Civil Action No. 8:23-cv-00629-MJM |

### PLAINTIFF'S MOTION FOR SPOLIATION RELIEF

Pursuant to Fed. R. Civ. P. 37(e), and this Court's September 26, 2024 Order (ECF 96), which provides that "Plaintiff's request to file a motion for spoliation is hereby GRANTED," Plaintiff Lifestyle Reality, LLC d/b/a Donna Kerr Group ("DKG") moves for an adverse inference instruction in connection with Defendant Natalie Perez's intentional deletion of all electronically stored information ("ESI") on a DKG-owned laptop, and an award of its attorneys' fees and costs incurred in connection with Ms. Perez's spoliation.

### STATEMENT OF FACTS

DKG sues four of its former real estate agents, Susan Kirn, Natalie Perez, Maura Fitzgerald and Robin Goelman (the "Individual Defendants"), and Compass DMV LLC ("Compass") for conspiring together to steal DKG's existing clients, prospective clients ("leads"), and confidential compilations of leads in a systematic and underhanded manner.

On May 12, 2022, Defendant Compass emailed the Individual Defendants—who were working for DKG as either employees or independent contractors at the time—contracts for the Individual Defendants to join Compass effective June 28, 2022. See **Exhibit A** (May 12, 2022

1

email from Compass stating "Your ICA's have just been sent to you"). On May 17, 2022, the Individual Defendants signed those contracts. See **Exhibit B** (the Independent Contractor Agreements signed May 17, 2022, but with an association date of June 28, 2022). From March 12 to June 28, 2022, the Individual Defendants and Compass conspired together to systematically steal DKG's existing clients, prospective clients, and lead lists.

During that time period, the Individual Defendants anticipated litigation which is evidenced by the compilation at **Exhibit C**. That compilation includes the following party admissions by Defendants:

- o On May 12, 2022, in a conversation among the Individual Defendants about their excitement about "working for our own team," Ms. Perez wrote to the other Individual Defendants, "Girl there's gonna be Donna [Kerr] BS that's inevitable!!"

- o On June 20, 2022, in a conversation among the Individual Defendants, the Individual Defendants made the following admissions:

    - Ms. Goleman wrote, "So the only reason I wanted to address this [an allegedly illegal marketing practice by DKG] prior to leaving [DKG is] **I want her [Donna Kerr] to think twice before going after anything . . . It sets things up for next week**. She is going to have a much harder time playing the victim. . . . [My best friend who is VP of marketing at Compass] said to **consult legal at Compass** . . . about if I should address this piece before leaving and making sure the email says what it should to document … **I want her [Donna Kerr] to feel scared to come after us**."

    - Ms. Kirn responded, "But you are right if nothing else than to throw down some warnings of don't f w me. I Like the advice of going to **compass legal** for a message with more **legal punch** and clutch phrasing."

    - Ms. Perez wrote, "Agreed! **Whatever we can have in our 'back pocket' for her [Donna Kerr] to hesitate going after us is essential. Especially for me and Susan [Kirn]** and our database because **she's gonna go after us** just like she did David."

    - Ms. Kirn responded, "Anybody know an **employment attorney**? I was thinking to have a quick chat with one about the technicalities of w2 under **the eyes of law**. Our position is frustrating in that we have no guidelines on protocol and good in way bc there is nothing **contractual** that **DK [Donna Kerr] can use to go after us**. However curious to know what an

2

        employers and employee generic **rights and entitlements** are when a w2 employee leaves. . ."

o      On June 22, 2022, in response to an email from the Individual Defendants asking about a "**loophole**" and for "**legal confirmation**," Susann Haskins of Defendant Compass wrote to the Individual Defendants, "I don't want to give **legal advice**, but I was told years ago by an **attorney** who at the time was an attorney for L&F that the failure of a broker to sign [a listing agreement] is a weak argument. I am on an "Ask the **Attorney**" call right now and will ask his **opinion**.

See **Exhibit C** (compilation establishing anticipation of litigation, with emphasis added).

On the morning of June 28, 2022, all four Individual Defendants resigned from DKG and simultaneously announced the opening of a new brokerage group with Compass called "The Phoenix Group of Compass." See **Exhibit D** (emails).

On the date of resignation, Ms. Perez returned to DKG a DKG-owned laptop that DKG had issued her for use during her employment; but, all of the electronically stored information on the machine had been erased. See **Exhibit E** (Declaration of Donna Kerr). This fact is undisputed. Counsel for DKG wrote counsel for Ms. Perez about Ms. Perez's "deletion of data and wiping of a laptop prior to leaving the Donna Kerr Group." **Exhibit F** (email exchange between counsel). Ms. Perez's counsel did not deny the misconduct, but rather attempted to explain it away by claiming that, "when she returned it [the laptop], she wanted to make sure that no personal medical or financial (i.e. tax) information was on the system. See id. DKG's computer forensic expert was provided that laptop "to determine whether it was wiped prior to it being returned to DKG," and concluded that "any [] profile that was utilized prior to July 22, 2022 and corresponding data were deleted from the machine." See **Exhibit G** (Declaration of Menachem Marc Hirschfeld) at ¶¶ 12-15. "Any attempt to recover data from the deleted partition was unsuccessful." Id. at ¶ 16.

The evidence on the laptop is not the only evidence spoliated by the Individual Defendants. The Individual Defendants also deleted calendar invites evidencing their meetings with clients and

3

leads sourced by DKG during the time that the Individual Defendants were already under contract to transition to Compass. DKG was able to detect this spoliation of ESI because the Individual Defendants forgot to delete the corresponding emails inviting and accepting attendance at the deleted calendar events. See **Exhibits E & H** (evidence of spoliation of calendar invites). The Individual Defendant also manipulated data in DKG's customer relationship management database without DKG's permission before misappropriating confidential information from that database, as evidenced by their admissions in the group chat attached as **Exhibit I**.

## ARGUMENT

This Court should award DKG an adverse inference instruction and its attorneys' fees and costs associated with Ms. Perez's spoliation of all the ESI on the DKG-owned laptop. Fed. R. Civ. P. 37(e) provides:

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
>> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; **or**
>>
>> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>
>>> (A) presume that the lost information was unfavorable to the party;
>>>
>>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; **or**
>>>
>>> (C) dismiss the action or enter a default judgment.

See Fed. R. Civ. P. 37(e).[1]

---

[1] Rule 37(e) was amended effective December 1, 2015. The pre-2015 case law "lacked clarity and consistency" and, to the extent it is inconsistent with the text of current rule, is no longer persuasive. See Gov't Employees Health Ass'n, 343 F.R.D. 474 at 482.

4

Under the current rule, "to trigger Rule 37(e), four criteria must be met: (1) the party was under a duty to preserve the ESI at issue; (2) the ESI at issue was not preserved; (3) the loss of the ESI was due to the party's failure to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced through additional discovery." Gov't Employees Health Ass'n v. Actelion Pharms. Ltd., 343 F.R.D. 474, 481 (D. Md. 2023).

Here, all four elements are satisfied. First, Ms. Perez was under an obligation to preserve the electronically stored information ("ESI") on the DKG-owned laptop when she instead deleted everything on the machine. See Membreno v. Atlanta Rest. Partners, LLC, 338 F.R.D. 66, 72 (D. Md. 2021) ("Once a party reasonably anticipates litigation, it is obligated to implement a 'litigation hold' to ensure that potentially relevant evidence under its control is identified, located, and preserved for use in anticipated litigation"). The compilation of admissions attached as **Exhibit C** summarized in the Statement of Facts provides clear and convincing evidence that Ms. Perez and the other Individual Defendants anticipated litigation on the day that they resigned and Ms. Perez wiped the laptop. Second and third, it is undisputed that Ms. Perez intentionally deleted the entire contents of the laptop. Counsel for Ms. Perez admitted as such, see **Exhibit F**, and DKG's computer forensic independently confirmed it, see **Exhibit G** at ¶¶ 12-16. Fourth, "[a]ny attempt to recover data from the deleted partition was unsuccessful." Id.

"If these [four triggering] criteria are met, Rule 37(e) offers two alternative paths[.]" Id. "The first avenue, Rule 37(e)(1), requires a court to make a finding of prejudice before sanctions may be warranted." Id. "The kind of prejudice sufficient to trigger Rule 37(e)(1) occurs when, as a result of the spoliation, the party claiming spoliation cannot present 'evidence essential to its underlying claim.'" Id. at 481-82.

5

Here, DKG is prejudiced by being deprived of an important source of evidence: all of the electronically-stored information on the DKG-issued laptop that Defendant Ms. Perez used during the two months when she was employed with DKG, but really working to steal DKG's existing clients, prospective clients, and confidential information. DKG has been deprived of the opportunity to review and use Ms. Perez's internet searches on that machine. DKG has been deprived of the opportunity to review the static documents saved on that machine, which may have included notes of the Individual Defendants' negotiations with Compass, and may have evidenced additional materials stolen from DKG and/or further manipulations by the Individual Defendants of lists of prospective clients misappropriated from DKG's confidential database. DKG has been deprived of the opportunity to review and use all other such evidence that would tend to establish that Ms. Perez, while employed by DKG, was working to take DKG's opportunities for herself and Compass. The data that was on the laptop cannot be restored or replaced. See **Exhibit G** at ¶ 16. "[T]he Advisory Committee cautions that it may be unfair to place the burden on the moving party to show prejudice for the destruction of information it has never seen." Gov't Employees Health Ass'n v, 343 F.R.D. at 486 (citing Advisory Committee Notes to Fed. R. Civ. P. 37 (e)(1)).

"The second avenue, Rule 37(e)(2), requires a court to make a finding that a party acted with the intent to deprive the opposing party of the ESI prior to imposing sanctions." Id. at 481. The second avenue justifies more severe sanctions. Id. at 482.

Here, it is clear that Ms. Perez acted with intent to deprive DKG of the contents of the laptop when she unilaterally erased everything from the machine after anticipating litigation. See **Exhibit C**. Ms. Perez's counsel claimed that Ms. Perez wiped the laptop because she "wanted to make sure that no personal medical or financial (i.e. tax) information was on the system." See **Exhibit F**. That excuse is not credible. If that were truly Ms. Perez's concern, she would have

6

deleted only the personal information at issue, not the entire contents of DKG's laptop. If that were truly Ms. Perez's concern, Ms. Perez would have worked together with her employer to ensure the continued protection of her sensitive information.

The intentionality of Ms. Perez's spoliation is also evidenced by the pattern of spoliation in which Ms. Perez and the other Defendants engaged. As set forth above, the Individual Defendants also deleted calendar events evidencing their appointments with clients and leads sourced by DKG, during the time when they were already under contract to transition to Compass, and manipulated and misappropriated information in DKG's CRM. See **Exhibit H & I**. The situation here is far from a failure of preservation through "inattention," as in Gov't Employees Health Ass'n, 343 F.R.D. at 484. The situation here is one of willful deletion.

In short, DKG is entitled to sanctions under Fed. R. Civ. P. 37(e). Courts have "broad discretion" to choose a spoliation sanction and "the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationale underlying the spoliation doctrine. See Membreno, 338 F.R.D. at 76. DKG requests two sanctions with this Motion.

First, DKG requests the following adverse inference instruction patterned on the instruction recommended in Membreno:

> Some evidence about the Defendants' liability has not been presented to you because it was destroyed by Ms. Perez. Specifically, on June 28, 2022, the date that the Individual Defendants resigned from DKG, Ms. Perez destroyed all of the electronically stored information on the DKG-owned laptop that had been issued to her for purposes of her work for DKG. Because Ms. Perez destroyed this information, relevant evidence has been lost. Ms. Perez should not have destroyed this information and she bears the sole responsibility for the loss of this evidence. You may infer that if Ms. Perez had not destroyed the information on the DKG-owned laptop, it would have contained evidence of Defendants' liability.

See 338 F.R.D. at 77. In the Fourth Circuit, an adverse inference is available as a sanction for spoliation if the spoliator's loss or destruction of the evidence was done willfully, as it was done

here.  Id.  at 76; see also Gov't Employees Health Ass'n, 343 F.R.D. at 487 ("To alleviate prejudice created by Defendants' spoliation, Plaintiff is entitled to a  jury instruction"); cf. QueTel Corp. v. Abbas, 819 Fed. Appx. 154 (E.D. Va. Jan. 19, 2018) (entering judgment as a sanctions for destroying a computer).

Second, DKG asks to shift its attorneys' fees and costs in connection with Ms. Perez's spoliation, which includes fees and costs in connection with DKG's computer forensic expert, this motion, and the meet and confer efforts and filings referenced in the accompanying Local Rule 104(7) Certification.  See Fed. R. Civ. P. 37; Kettler Int'l, Inc. v. Starbucks Corp., 96 F. Supp. 3d 563, 569-70 (E.D. Va. 2015) (the award of costs and attorneys' fees are appropriate in favor of the moving party as an alternative to or in addition to another spoliation sanction, and may include any investigatory costs into the spoliator's conduct, in addition to another spoliation sanction); Gov't Employees Health Ass'n, 343 F.R.D. at 486-87 (awarding one half of the fees and costs associated with drafting a letter request for a conference).

WHEREFORE, Plaintiff Lifestyle Realty, LLC d/b/a Donna Kerr Group respectfully requests that this Court enter the proposed Order submitted herewith.

                                       Respectfully submitted,

                                       SHULMAN ROGERS, P.A.

                                       */s/ Glenn C. Etelson*
                                       Glenn C. Etelson, Bar No. 06760
                                       getelson@shulmanrogers.com
                                       Shirley M. Steinbach, Bar No. 20038
                                       ssteinbach@shulmanrogers.com
                                       12505 Park Potomac Avenue, Sixth Floor
                                       Potomac, MD  20854
                                       (301) 230-5200
                                       (301) 230-2891
                                       *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of February 2025, the foregoing was served on all counsel of record via the Court's electronic filing system.

                                          */s/ Glenn C. Etelson*
                                          Glenn C. Etelson

## LOCAL RULE 104(7) CERTIFICATION

Before filing this Motion, DKG attempted to obtain the consent of counsel for Defendants, including in a transcribed meeting, the Individual Defendants have not consented to the relief requested with this Motion, and the Court has granted DKG leave to file this Motion.

On October 24, 2023, DKG filed a Notice of Intent to File Motion for Discovery Sanctions ("Notice"). ECF 51. On November 3, 2023, the Individual Defendants filed a Response as directed by the Court. ECF 51-52 & 56. At the telephonic discovery dispute conference on November 15, 2023, the Court ordered the parties to engage in further meet and confer efforts in an attempt to resolve the issues raised in the Notice, and to include the outcome of those efforts in the Joint Status Report to be filed by December 18, 2023. ECF 60 at p. 4. The parties met and conferred in the presence of a court reporter consistent with the Court's Order. ECF 70 (transcript). The parties were unable to resolve the issues that are the subject of this motion as set forth in the JSR. ECF 68. On March 15, 2024, DKG filed correspondence to ensure that its request to file this Motion was squarely before the Court. ECF. 83. With its Order dated September 26, 2024 Order at ECF 96, this Court has held that "Plaintiff's request to file a motion for spoliation is hereby GRANTED."

                                          */s/ Shirley M. Steinbach*
                                          Shirley M. Steinbach