## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LIFESTYLE REALTY, LLC, | * | |
| d/b/a Donna Kerr Group, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. MJM-23-629 |
| | * | |
| SUSAN KIRN, *et al.*, | * | |
| | * | |
| Defendants/Counter-Plaintiffs, | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM OPINION

Plaintiff Lifestyle Realty, LLC, d/b/a Donna Kerr Group ("Plaintiff" or "DKG"), is a local, woman-owned, residential real estate brokerage firm built by Donna Kerr ("Ms. Kerr"). (ECF No. 1). Plaintiff initiated a lawsuit against Defendants Natalie Perez, Susan Kirn, Maura Fitzgerald, and Robin Goelman (collectively, "Individual Defendants") and Defendant Compass DMV, LLC ("Defendant Compass"), seeking declaratory and injunctive relief and compensatory and punitive damages. (ECF No. 1). In brief, Plaintiff alleges that the Individual Defendants, who were real estate agents employed by it, breached their fiduciary and contractual duties and acted unlawfully when they appropriated Plaintiff's existing clients and confidential lead lists in order to start and be profitable at a new competitor real estate brokerage group called "The Phoenix Group of Compass." (ECF No. 86, "Third Amended Complaint," ¶¶ 1-2). Plaintiff pleads that Defendant Compass DMV conspired with the Individual Defendants to obtain Plaintiff's proprietary and confidential information and engaged in other tortious acts, including recruiting and soliciting the Individual Defendants, directing their unlawful efforts, and providing financial support to them, resulting in "stolen actual and potential commissions" and damages related to marketing. (*Id.*, ¶¶ 1-2, 236, 246). Plaintiff advances twelve counts against the Defendants, including tortious

interference with contracts and prospective economic advantage; misappropriation of trade secrets (federal and state causes of action); unfair competition, civil conspiracy, fraudulent concealment; and unjust enrichment. (*Id.*, ¶¶ 1-348).

Pending before the Court is "Plaintiff's Motion for Spoliation Relief" ("the Motion"), and exhibits appended thereto. (ECF Nos. 103, 103-1 through 103-9). The Individual Defendants have filed an opposition ("ID Opposition") and exhibits related thereto. (ECF Nos. 108, 108-1 through 108-7). Defendant Compass has also filed a response in opposition ("DC Opposition") and an exhibit related thereto. (ECF Nos. 109, 109-1). Plaintiff filed a Reply and exhibits attached thereto. (ECF Nos. 113, 113-1, 113-2).

In addition, as set forth more fully below in Section II.B., Plaintiff filed "Plaintiff's Supplement to Motion for Spoliation Relief" ("Supplemental Motion"), attaching an exhibit. (ECF Nos. 107, 107-1). This filing led to a response from the Individual Defendants, and later another filing from Plaintiff. (ECF Nos. 123, 127).

As set forth herein, all of the matters raised in the Motion and briefing related thereto have been sufficiently argued, and the Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025). For the reasons set forth herein, the Motion is denied**.**

## I.    PROCEDURAL BACKGROUND

Several procedural events in this case are not relevant to the spoliation issues. Thus, in this Memorandum Opinion, the Court will only describe the procedural events relevant to resolving the pending spoliation motion.

Before a Scheduling Order was entered in this case, the district court referred the matter to the undersigned for resolution of discovery disputes and all related scheduling. (ECF Nos. 18, 100).

Consistent with the district court's procedures, Plaintiff sought permission from the Court to file a motion for discovery sanctions against the Individual Defendants by filing a notice. (ECF No. 53). In that notice, Plaintiff asserted that a spoliation sanction was proper, namely, that an adverse inference jury instruction against the Individual Defendants was in order "as a remedy for Defendant Natalie Perez wiping the entire contents of a DKG-issued laptop after Perez anticipated litigation and after she retained counsel of record." (*Id.*).[1] Plaintiff also sought reimbursement for reasonable attorney's fees and costs "incurred in connection with the spoliation." (*Id.*). Upon court order, the Individual Defendants filed a response. (ECF Nos. 52, 56). The Individual Defendants countered that an adverse inference instruction was improper because Plaintiff could not establish that Individual Defendant Natalie Perez erased the contents of the DKG-issued laptop: (a) willfully or in bad faith; (b) after she retained counsel; and (c) when she had a duty to preserve its contents. (ECF No. 56). In addition, the Individual Defendants asserted that Plaintiff could not establish prejudice, because it could not even establish that the information had been lost. (*Id.*).

In response to the notice, the undersigned conducted a discovery dispute hearing. (ECF No. 58). During that hearing, the undersigned instituted discovery protocols for the parties to use to resolve their discovery disputes, which the parties represented that they would follow. (ECF Nos. 58, 59, 60-64). The Court further ordered the parties to meet and confer with a court reporter present to address the potential spoliation issue, and to update the Court with its efforts to resolve the same. (ECF Nos. 58, 60).

---

[1] Plaintiff also asserted that the Individual Defendants failed to comply with the district court's order requiring production of unredacted versions of certain non-privileged communications, and ultimately sought *in camera* review of a large swath of communications between the Individual Defendants to determine whether documents had been withheld from production based upon an improper claim of privilege. (ECF No. 51). To the extent that those issues remain live, the Court declines to resolve them in this Memorandum Opinion; rather, the Court will resolve them separately.

Subsequently, the parties filed a Joint Status Report, a transcript of their meet and confer session, and a letter update, which ultimately apprised the Court that the parties were unable to resolve their dispute. (ECF Nos. 68, 70-1, 83).

After the district judge resolved Plaintiff's request to file a third amended complaint, the undersigned scheduled a discovery dispute hearing. (ECF Nos. 73, 74, 84, 85, 90, 91). During that hearing, the undersigned held that Plaintiff could brief the potential spoliation issue. (ECF Nos. 93, 125).

Following the hearing, the Court set a specific briefing schedule for Plaintiff to file its spoliation motion, with said briefing due almost **5 months later** (specifically, **155 days** later) on March 1, 2025. (ECF No. 96). Any opposition by the Defendants to said motion was due on March 21, 2025, with a Reply from Plaintiff being due on March 29, 2025. (*Id.*). The Order was explicit; it did not permit any other briefing.

Plaintiff timely filed the spoliation motion, i.e., it was filed one day early. (ECF No. 103). That filing is 93 pages in length, to include Exhibit C. The Individual Defendants and Defendant Compass DMV timely filed their oppositions to the Motion. (ECF Nos. 108, 109).

Twenty-two days after filing the Motion, and right before the Defendants filed their oppositions related thereto, Plaintiff filed the Supplemental Motion. (ECF No. 107). Later, Plaintiff timely filed its Reply to the Defendants' oppositions. (ECF No. 113).

II.  **DISCUSSION**

A. **Arguments**

Plaintiff contends that it has met its burden, by clear and conviction evidence, to establish entitlement to imposition of sanctions against Individual Defendants Perez, Kirn, Fitzgerald, and Goelman. In support thereto, Plaintiff initially advances five arguments. First, Individual

Defendant Perez had an obligation to preserve the ESI on the DKG-issued laptop when she erased its contents. Second, ESI on the DKG-issued laptop was not preserved. Third, that Individual Defendant Perez failed to take reasonable steps to preserve the lost ESI. Relatedly, Plaintiff's computer forensic person was unable to recover data from the DKG-issued laptop. Fourth, that Plaintiff has been prejudiced because it has been deprived of "an important source of evidence" (i.e., the ESI on the DKG-issued laptop). Fifth, that Individual Defendant Perez acted with intent to deprive Plaintiff of ESI, which means that the severe sanction of an adverse jury instruction against all Individual Defendants is warranted. (Motion, pp. 4-7).

In addition, as set forth more fully below in Section II.B., Plaintiff filed a supplemental motion, advancing two additional arguments to support the Motion. Finally, in its Reply, Plaintiff slightly alters and reiterates earlier arguments. First, Plaintiff now avers that all four Individual Defendants failed to take reasonable steps to preserve the ESI on the DKG-issued laptop. Second, Plaintiff reiterates that Individual Defendant Perez acted with intent to deprive Plaintiff of the ESI on the DKG-issued laptop. Third, Plaintiff contends that "a reasonable party in the same factual circumstances would have 'reasonably foreseen litigation' when Ms. Perez erased the DKG laptop." Fourth, Plaintiff is prejudiced because it cannot present evidence essential to its underlying claim.

### B. Preliminary Matter Related to the Filing of Supplemental Motion

The Supplemental Motion is 30 pages in length, to include Exhibit J. (ECF No. 107). Exhibit J is comprised of excerpts from electronic communications (chats) involving the Individual Defendants that occurred over several days, including the same highlighted dates of May 12, 2022 and June 20, 2022 mentioned in Exhibit C to the Motion. (ECF No. 107-1, pp. 1-24).[2]

---

[2] Plaintiff asked the Clerk of the Court to restrict Exhibit J from public view, consenting to its filing under seal on an interim basis. (ECF No. 114). The Court finds that Plaintiff acted appropriately in so doing while the spoliation issue

1.  *Individual Defendants Objections to the Supplemental Motion and Exhibit J*

The Individual Defendants objected to the filing of the Supplemental Motion, asking the Court for leave to file a "Motion to Strike." (ECF No. 123). The Individual Defendants advanced four arguments in support of their request to strike the Supplemental Motion. First, that Plaintiff filed the Supplemental Motion without sufficiently meeting and conferring with counsel to resolve the potential attorney-client privilege issue surrounding Exhibit J. Second, that Plaintiff deliberately violated the Court's briefing order, tactically choosing to wait, without justification, to file its Supplemental Motion until the day that all Defendants' oppositions to the original spoliation motion were due. Third, that Exhibit J contained "privileged communications from the Individual Defendants to their counsel, which were inadvertently produced during the ordinary course of litigation." (ECF No. 123, p. 1). Fourth, Plaintiff's interpretation of what Exhibit J signifies misconstrues the facts to support a speculative argument about Individual Defendant Perez's motivation for erasing the DKG-issued laptop. (*Id.*).

2.  *The Court Declines to Consider Exhibit J*

In this Circuit, a court may exercise its discretion and  strike filings that are not filed in compliance with its orders or its local rules. *See generally Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 150 (4th Cir. 2009). A court's authority to strike filings comes from its "broad discretion to manage its docket and safeguard the integrity of judicial proceedings." *Morris-Wilkins v. Joyner*, Civ. No. 24-CV-00462-M-RN, 2025 WL 1296214, at *1 (E.D.N.C. May 5, 2025)(citing *Degen* v. *United States*, 517 U.S. 820, 823 (1996) (recognizing the court's inherent

---

and possible attorney-client privilege issue remain pending before the Court. *See generally Big Lot Stores, Inc. v. Giant of Maryland, LLC*, Civ. No. DKC-06-3249, 2008 WL 11367511, at *7 (D. Md. Jul. 14, 2008)(court ordered papers to remain under seal while awaiting further briefing from the parties on the applicability of Local Rule 105.11).

power to "protect [its] proceedings and judgments in the course of discharging [its] traditional responsibilities")).

The Court first finds that the Supplemental Motion, filed on March 21, 2025, violated the Court's Order, which clearly identified a date for filing a spoliation motion.  *See* ECF No. 96.  The Court next finds that the Supplemental Motion and a subsequent filing by Plaintiff, (ECF Nos. 107, 127), reflect that Plaintiff failed to seek leave of court to late file the Supplemental Motion, violating not only the Court's briefing order, but also Local Rule 105.9 (D. Md. 2025). The Court also finds that Plaintiff has failed to comply with Local Rule 104.7; indeed, there is no certificate or record before the Court that Plaintiff attempted to meet and confer to discuss its desire to file the Supplemental Motion or Exhibit J.  (ECF Nos. 107, 127).  The Court has repeatedly admonished counsel about the need to comply with its prior orders, including the order that counsel shall follow the Local Rules.  *See* ECF Nos. 59, 100.  The relevant focus is the prejudice to the Court in having to expend resources unnecessarily, not prejudice to the Individual Defendants. *See Deegan*, 517 U.S. at 823.  Thus, the Court declines to reward Plaintiff's noncompliance with its orders.

The Court further finds that the Supplemental Motion purports to bring to the Court's attention "additional [documentary] evidence in support of spoliation sanctions," Exhibit J, that Plaintiff allegedly "just discovered" from "Defendants' most recent document productions." (Supplemental Motion, p. 1).  A review of the other letters filed in this case reflects that the "most recent document productions" from the Defendants occurred on January 31, 2025.  *See, e.g.*, ECF No. 119.  January 31, 2025 was roughly 28 days before the original spoliation motion was filed. It is unclear why Plaintiff did not review the January document production before filing a motion

in which it has the burden of proof. The Court finds unpersuasive Plaintiff's arguments that this information was "just discovered."

In sum, the Court finds good cause to strike ECF No. 107 and Exhibit J. *See Gaskins v. Balt. City Pub. Schs.*, Civ. No. JKB-15-2961, 2016 WL 192535, at *3 (D. Md. Jan. 15, 2016), *aff'd sub nom. Gaskins v. Abiodun*, 649 F. App'x 307 (4th Cir. 2016)(court has inherent authority to strike documents for good cause).

To be clear, the Court declines to consider Exhibit J at this juncture for two reasons. First, because it was filed in violation of the Court's orders. Second, even were the Court to consider Exhibit J,[3] it would not change the Court's ultimate ruling: that Plaintiff has failed to meet its burden, by clear and convincing evidence, to establish the predicate elements of Rule 37(e), which means that no spoliation sanction is warranted. *See* Sections II.G. - II.I., *infra*.

## C. Spoliation of ESI

In this Circuit, spoliation has been defined as "the destruction or material alteration of evidence or the failure to preserve property" that a party could use as evidence "in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)(internal citations omitted); *see also Boone v. Everett.*, 751 F. App'x 400, 401 (4th Cir. 2019)(per curiam).

As is relevant here, a court derives its power to impose sanctions upon a party who spoliates evidence from two sources. First, because Plaintiff alleges that Defendant failed to preserve

---

[3] As the Court understands Plaintiff's argument, Exhibit J constitutes further evidence that "Ms. Perez and the other Individual Defendants anticipated litigation at the time that Ms. Perez wiped the laptop." (Supplemental Motion, p. 2). As held below in Section II.F., the Court finds that Plaintiff has met its burden on establishing that Individual Defendant Perez anticipated litigation in June 2022. Thus, the Court need not analyze Exhibit J to make this finding. Furthermore, the propriety of the Individual Defendants' assertion of attorney-client privilege over Exhibit J is now under the Court's review.

electronically-stored video footage that she requested, the power to sanction comes from Fed. R. Civ. P. 37(e).

Fed. R. Civ. P. 37(e) applies to a failure to preserve electronically stored information (ESI). In analyzing whether Rule 37(e) applies, a court must first determine that the following predicate elements exist:

> (1) if [ESI] that should have been preserved in the anticipation or conduct of litigation; (2) is lost; (3) because a party failed to take reasonable steps to preserve it; and (4) it cannot be restored or replaced through additional discovery.

Fed. R. Civ. P. 37(e).  Thus, it is only if these criteria are met that a court then analyzes the two different options available to determine whether sanctions are warranted. *Jennings v. Frostburg State Univ.*, 679 F.Supp.3d 240, 265 (D. Md. 2023); *Gov't Employees Health Ass'n v. Actelion Pharmaceuticals, LTD., et al.,* 343 F.R.D. 474, 481 (D. Md. 2023); *Mod. Remodeling v. Tripod Holdings, LLC*, Civ. No. CCB 19-1392, 2021 WL 3852323, at *10 (D. Md. Aug. 27, 2021)(citing *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018)); *Shackelford v. Vivint Solar Developer, LLC*, Civ. No. ELH 19-954, 2020 WL 3488913, at *11 (D. Md. June 25, 2020); *see also Packrite, LLC v. Graphic Packaging Int'l, LLC,* Civ. No. 17-1019, 2020 WL 7133806, at *3 (M.D.N.C. Dec. 4, 2020), *report and recommendation adopted*, Civ. No. 17-1019, 2021 WL 9681472 (M.D.N.C. Jan. 6, 2021)(same).

If the threshold criteria are satisfied, then a court must next find that one of the following circumstances exist to merit imposition of sanctions:

> (1) upon finding prejudice to another party from the loss of the information, [a court] may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in litigation may [a court]: (A) presume that the lost information  was unfavorable to the party; (B)

> instruct the jury that it may or must presume that the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e)(1); Fed. R. Civ. P. (e)(2)(A)-(e)(2)(C); *see also Mod. Remodeling*, 2021 WL 3852323, at *10 (if triggering criteria are met court next analyzes whether "spoliation resulted in prejudice under Rule 37(e)(1) or occurred with intent under Rule 37(e)(2) such that court ordered relief is appropriate").

The court enjoys "broad discretion in deciding whether to impose sanctions." *Al-Sabah v. Agbodjogbe*, Civ. No. ELH 17-730, 2019 WL 4447235, at *4 (D. Md. Sept. 17, 2019)(quoting *Steves & Sons*, 327 F.R.D. at 103).

The party seeking imposition of sanctions due to spoliation bears the burden of proof. *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013). Because the Fourth Circuit has not yet articulated the standard of proof required to prevail on such a motion, "'clear and convincing evidence,' as opposed to [mere preponderance of the evidence] certainly suffices." *Glynn v. EDO Corp.*, Civ. No. JFM 07-1660, 2010 WL 3294347, at *2 (D. Md. Aug. 20, 2010); *see also Fowler v. Tenth Planet, Inc.*, 673 F.Supp.3d 763, 773 (D. Md. 2023).

In sum, the law is clear that Plaintiff, as the party moving for spoliation sanctions, has the burden to put evidence before the Court and to demonstrate that all of the triggering elements are met under Rule 37(e). Then, assuming that Plaintiff meets its burden, only then does the Court determine whether prejudice exists that requires curing, or whether intent to deprive exists, to warrant the sanction of an adverse jury instruction. *See* Fed. R. Civ. P. 37(e)(1), (e)(2), Advisory Committee Notes to the 2015 Amendments.

### D.  Facts Before the Court

The Court has reviewed the parties' exhibits in support of their respective filings. The Court has evaluated the relevant facts to determine whether Plaintiff has met its burden, by clear and convincing evidence, to establish entitlement to a spoliation sanction.

Immediately below, the undersigned first summarizes the facts put before the Court.

### 1.  *Facts Not in Dispute*

#### a.  Employment

Plaintiff hired Individual Defendant Natalie Perez as one of its employees on November 20, 2017.  (ECF No. 103-5, "Kerr Decl."; ECF No. 108-1, "Perez Decl.").  Plaintiff hired Individual Defendant Susan Kirn as an employee in either 2016 or 2017.  (Kerr Decl. ¶ 3; ECF No. 108-4, "Kirn Decl.").  Individual Defendant Maura Fitzgerald began working for Plaintiff on February 22, 2018, and Individual Defendant Robin Goelman began working for Plaintiff in October 2019. (Kerr Decl. ¶¶ 5, 6; ECF No. 108-5, "Fitzgerald Decl."; ECF No. 108-6, "Goelman Decl.").

To aid them in their work, Plaintiff provided to the Individual Defendants a "G-Suite/Google Workspace"(to include a Google Drive, Gmail, and calendar applications).  (Kerr Decl. ¶ 7; Perez Decl. ¶ 4).

On or about May 17, 2022, while still employed at DKG,  Individual Defendants signed contracts to join Defendant DMV Compass as real estate agents on June 28, 2022. (ECF No. 103-2, pp. 1-14). Individual Defendant Perez received an identical contract, but did not sign it. (ECF Nos. 103-1; 103-2, pp. 14-16).

The Individuals Defendants simultaneously resigned on June 28, 2022.  (Kerr Decl. ¶ 9; Perez Decl. ¶ 10; Kirn Decl. ¶ 6; Fitzgerald Decl. ¶ 6; Goelman Decl. ¶ 7).  That same day, they

announced their new brokerage group called "Phoenix Group," which was affiliated with Defendant Compass DMV.  (ECF No. 103-4, pp. 2-11).

### b.  DKG-Issued Laptop

Plaintiff provided the laptop at issue ("DKG-issued laptop") to Individual Defendant Perez to use. (Kerr Decl. ¶ 8; Perez Decl. ¶ 3).  The laptop is a MacBook Air with serial number C1MT90WQH3QK. (ECF No. 103-7, "Hirschfeld Decl." ¶ 12).

Individual Defendant Perez used the laptop for business purposes, saving "sales contracts, disclosures, listing/buyers agreements, [and] settlement statements relevant to this matter." (Perez Decl. ¶ 4).  Individual Defendant Perez also used this laptop to store "[her] bank statements. . .separation/divorce documents. . .login information for financial institutions and medical records, tax information. . . [and her] children's educational and medical records." (Perez Decl. ¶ 3).

The same day that the Individual Defendants resigned, Individual Defendant Perez returned a laptop to Plaintiff that had been erased of its contents and restored to its original factory settings. (Kerr Decl. ¶ 11; Hirschfeld Decl. ¶¶ 12, 15; Perez Decl. ¶¶ 7, 10).

### c.  Cease and Desist Letter

On July 1, 2022, Individual Defendants Perez, Kirn, Fitzgerald, and Goelman received a "cease-and-desist" letter from Plaintiff's counsel.  (ECF No. 108-7; ECF No. 109-1; ECF No. 113-3, p. 2; Perez Decl. ¶ 12; Kirn Decl. ¶ 7; Fitzgerald Decl. ¶ 7; Goelman Decl. ¶ 9).  This letter notifies the Individual Defendants of their alleged wrongdoing and of the legal claims that Plaintiff contemplated pursuing against them, and demanded that they take steps to preserve documents and ESI. (ECF No. 108-7).

Only after receiving this letter did Individual Defendants Perez, Kirn, Fitzgerald, and Goelman contact counsel. (Perez Decl. ¶ 12; Kirn Decl. ¶ 7; Fitzgerald Decl. ¶ 7; Goelman Decl. ¶ 9).

### 2. *Additional Facts from Plaintiff*

#### a. <u>Electronic Communications (chats) involving Individual Defendants</u>

Plaintiff relies on highlighted extracts from electronic communications (chats) between the Individual Defendants.  For instance, on  May 12, 2022, between approximately 7:34 pm - 10:42 pm, Individual Defendants Perez and Fitzgerald communicate.  (ECF No. 103-3, pp. 3-4).  On June 20, 2022, between approximately 7:34 am and 8:13 am, Individual Defendants Goelman, Perez, and Kirn communicate.  (ECF No. 103-3, pp. 6-8).  Plaintiff also relies on an email chain. Specifically, on June 22, 2022, at 7:54 am, Individual Defendant Kirn sends an email to an employee of Defendant Compass DMV, who responds at 9:52 am to Individual Defendant Kirn, cc'ing Individual Defendants Goelman, Fitzgerald, Perez and others.  (ECF No. 103-3, p. 10).

Plaintiff also puts before the Court electronic communications (chats) between  Individual Defendants Perez and Fitzgerald on May 4-5, 2022, which it contends are admissions that these defendants "manipulated data in DKG's customer relationship management database without DKG's permissions before misappropriating confidential information in that database."  (Motion, p. 4; ECF No. 103-9, pp. 2-6).

Attached to the Reply, Plaintiff has appended Exhibit L.  Exhibit L is not in chronological order. Exhibit L appears to consist of electronic communications (chats) involving two or more of the Individual Defendants on the following dates: July 6, 2022, January 10, 2022, January 15 & 17, 2023, January 16-19, 2022, April 2-4, 2022, May 2-3, 2022, May 12, 2022, June 27, 2022, July

2,3, 6, 9, and 12, 2022, July 18-29, 2022, several dates in August 2022, September 2022, October 2022, January 2023, February 2023.  (ECF No. 113-2, pp. 1-66).

    b. <u>Exhibit M</u>[4]

   Plaintiff relies on a July 1, 2022 email from Individual Defendant Kirn to an employee of Individual Defendant Compass, cc'ing Individual Defendant Perez.  (ECF No. 113-3, p. 2).  The bottom part of this document is a July 1, 2022 email from Plaintiff's counsel to Individual Defendant Kirn, reportedly attaching a cease-and-desist letter.  (*Id.*).

    c. <u>Gmail: Emails and Calendar invitations</u>

   On June 28, 2022, Plaintiff logged into the Individual Defendants' Gmail accounts and found emails between them that show acceptance of certain calendar events, "but for which no corresponding event (sic) appear on the Google calendar, indicating that the calendar events have been deleted."  (Kerr Decl. ¶¶ 12, 13).

   Plaintiff has also provided calendar invitations in emails and acceptances and/or change notifications related thereto, where it appears that Individual Defendant Perez is inviting Individual Defendant Kirn to "LA" associated with different addresses.  The dates of the events are: February 7, 2022, May 2, 2022, May 17, 2022, May 24-25, 2022, June 1, 2022 and Jun 25, 2022.  (ECF No. 103-8, pp. 2-24).

---

[4] After Defendant Compass DMV objected to the public filing of  Exhibit M, (ECF No. 107-2), Plaintiff asked the Clerk of the Court to keep it from public view, consenting to its filing under seal on an interim basis.  (ECF No. 114). Subsequently, Defendant Compass DMV withdrew its objection to the confidential designation.  (ECF No. 116)

d.  DKG-Issued Laptop: Computer Forensic Expert

A computer forensic expert hired by Plaintiff has declared that he is unable to recover any data from the DKG-issued laptop (MacBook Air with serial number C1MT90WQH3QK). (Hirschfeld Decl. ¶ 16).[5]

3.  *Additional Facts from Individual Defendants*

a.  Electronic Communications (chats) involving Individual Defendants

Individual Defendant Perez explained that the May 4-5, 2022 chat between her and Individual Defendant Fitzgerald related to "making corrections in the DKG CRM platform," and had nothing to do with "anticipated litigation with Ms. Kerr." (Perez Decl. ¶ 8). Individual Defendant Fitzgerald's declaration corroborates this interpretation. (Fitzgerald Decl. ¶ 4).

Regarding a June 20, 2022 electronic communications (chats), Individual Defendant Goelman declared that one thread in the conversations involved her desire to confront Ms. Kerr about Ms. Kerr's "spoof marketing on my SOI (friends and family contracts) to make it look like I was inviting them to an event." (Goelman Decl. ¶ 5). Individual Defendant Goelman asserted that she communicated with Individual Defendants Perez, Kirn, and Fitzgerald about this issue because she hoped to address it before resigning from employment with Plaintiff. (*Id.*).

Regarding a June 20, 2022 electronic communications (chats), Individual Defendant Perez explained that one thread in the conversations was not about preparing for litigation but, rather,

---

[5] Plaintiff also provided email exchanges between prior counsel for the Individual Defendants and Plaintiff's counsel. (ECF No. 103-6, pp. 2-4; ECF No. 113-1. pp. 2-10). According to Plaintiff, this "evidence" "proves that the Individual Defendants intended to deprive DKG of highly relevant and incriminating communications, by redacting them and claiming to DKG and this Court. . . that those highly relevant and incriminating communications were 'irrelevant.'" (Reply, p. 7) The Court disagrees. First, such heated exchanges between counsel are not reliable evidence. These email chains contain hearsay and lack other indicia of reliability (i.e., statements are not made under oath, in an affidavit or in a declaration). Thus, the Court declines to find that these exchanges are **evidence** relevant to the question of whether Individual Defendant Perez (not former counsel) acted with intent to deprive Plaintiff of the contents of the DKG-issued laptop. Instead, the Court considered evidence before it that complies with 28 U.S.C. §1746. *See, e.g.,* Perez Decl., ¶¶ 3, 6.

about how Ms. Kerr used an "unethical marketing ploy" involving Individual Defendant Goelman's contact information, and how to use the same in any "subsequent discussions about potential referral fees." Individual Defendant Perez claimed that she believed that "Ms. Kerr would potentially seek the same amicable agreement for referral fees" as she had done with another former DKG employee.   (Perez Decl. ¶ 9).   Individual Defendants Kirn and Fitzgerald characterized this part of the June 20, 2022 chats as communications about how to use Ms. Kerr's "unethical marketing ploy" to their benefit in "[a] subsequent discussion about any potential referral fees."  (Kirn Decl. ¶ 5; Fitzgerald Decl. ¶ 5).  In addition, Individual Defendant Kirn also claimed that her references in certain parts of the June 20, 2022 electronic chats, and the reference to contacting an employment attorney in an email involving an employee of Defendant Compass DMV were her way of deciding how to behave appropriately upon separating from employment with Plaintiff.  (Kirn Decl. ¶¶ 10-11).

Individual Defendants Kirn, Fitzgerald, and Goelman declared that there were conversations between/amongst one or more of them, and conversations between one or more of them and Individual Defendant Perez.  According to them, these conversations were about how to "best position themselves for [a] meeting" with Ms. Kerr that would occur upon their departure. They all denied thinking that litigation involving Ms. Kerr was a possibility.  (Kirn Decl. ¶ 4; Fitzgerald Decl. ¶¶ 4, 5; Goelman Decl. ¶¶ 4, 5).

b.  "Resignation Zoom Meeting" on June 28, 2025 and July 1, 2022 Letter

Individual Defendants Perez, Kirn, Fitzgerald, and Goelman declared that during  the "resignation Zoom meeting" with Ms. Kerr they discussed clients who sought to terminate listing agreements with Plaintiff, clients who were working with them at their new brokerage firm, and the transactions that were pending closing in the near future. The Individual Defendants all

characterized the meeting as "cordial," and that Mr. Kerr never mentioned any dispute with them or that she was contemplating litigation against them. In addition, they declared their beliefs that "Ms. Kerr would request a follow up meeting. . .to discuss [the] clients and how to facilitate a smooth transition" and potential sharing of referral fees. (Perez Decl. ¶ 11; Kirn Decl. ¶ 6; Fitzgerald Decl. ¶ 6; Goelman Decl. ¶ 7).

All professed to being "shocked" or "stunned" or "surprised" at receiving the July 1, 2022 cease-and-desist letter, and claimed that they did not consider litigation. (Perez Decl. ¶ 12; Kirn Decl. ¶ 7; Fitzgerald Decl. ¶ 7; Goelman Decl. ¶ 9). All claimed that they did not anticipate litigation before receiving that letter. (Perez Decl. ¶ 15; Kirn Decl. ¶ 12; Fitzgerald Decl. ¶ 10; Goelman Decl. ¶ 12).

    c. <u>DKG-Related Information</u>

Individual Defendant Perez stored "the vast majority of DKG work materials (including sales contracts, disclosures, listing/buyer agreements, settlement statements and documents) on the DKG Google Drive." (Perez Decl. ¶ 4). According to Perez, "it was not [her] practice or routine to save work materials to the DKG laptop instead of the DKG Google Drive." (*Id.*). Perez also declares that " any and all sales contracts, disclosures, listing/buyers agreements, [and] settlement statements relevant to this matter which were saved onto the DKG laptop's hard drive were ancillary to the DKG Google Drive." (*Id.*). Furthermore, Plaintiff "has always had access to said information on the DKG Google Drive prior to and after June 28, 2022." (*Id.*).

    d. <u>DKG-Issued Laptop</u>

Before Individual Defendant Perez ceased working for DKG, in or about early June 2022, she made a "mirror image" of the DKG-issued laptop. (Perez Decl. ¶ 7). In particular, she did this by copying the data from the DKG-issued laptop "to an external hard drive owned by [Andrea]

Bramson," and then uploading the data from there to a laptop (MacBook Air, serial number FVFC1D5PLYWG, "Perez laptop."). (Perez Decl. ¶ 7). According to Perez, with the aid of Bramson, "we successfully copied the information from the DKP laptop to the Perez laptop," which she confirmed by verifying that "the material on the DKG laptop matched the material on the Perez laptop by using the Perez laptop and the DKG laptop and seeing that all of the files, folders, and data were in the same locations on both laptops." (*Id.*). Individual Defendant Perez also declares that "after the copying was complete, I then reset the DKG laptop to factory settings." (*Id.*).

Andrea Bramson executed a declaration. (ECF No. 108-2, "Bramson Decl."). Ms. Bramson corroborated Individual Defendant Perez's version of how the material from the DKG-issued laptop was transferred to an external hard drive that she owned, and later uploaded to the Perez laptop. (Bramson Decl. ¶ 4).

As justification deleting the entire contents of the DKG-issued laptop, Individual Defendant Perez declared that she knew that she would have to return it before leaving, and that she had "no instructions on how to return [it] when I departed." She continued: "I was concerned about Ms. Kerr having access to over five years of personal and confidential information and wanted to protect it." (Perez Decl. ¶ 6).

e.  <u>Perez Laptop (MacBook Air, serial number FVFC1D5PLYWG)</u>

Andreas Mueller, a digital forensic expert, was hired to "perform the collection and analysis of digital evidence from [the Perez laptop]." (ECF No. 108-3, "Mueller Decl." ¶¶ 2, 3). The purpose of collecting and analyzing data from the Perez laptop "was to determine the timeline and circumstances under which certain files were introduced into the [Perez laptop] in June 2022." (Mueller Decl. ¶¶ 4, 9)

18

As a predicate step, a forensic analyst employed by Mr. Mueller's company collected data from the Perez laptop.  (Mueller Decl. ¶¶ 7, 8).  Next, Mr. Mueller performed his forensic analysis. After performing that forensic analysis, he concluded that between June 12, 2022-June 13, 2022 there were 56,823 "files and folders [introduced] to the Perez laptop."  (Mueller Decl. ¶¶ 4-6, 14). He further opined that he examined the metadata, and that his examination of the metadata revealed that there was likely a "mass-copy operation of files and folders from external media to the [Perez laptop]."  (Mueller Decl. ¶¶ 6, 10-13).

>    f.  <u>Documents Produced by Individual Defendants</u>

As of the time that the spoliation motion was filed, Individual Defendants Perez, Kirn, Fitzgerald and Goelman had produced to Plaintiff "approximately 40,000 documents and communications [extracted] from [their] computers and [their] phones."  (Perez Decl. ¶ 13; Kirn Decl. ¶ 8; Fitzgerald Decl. ¶ 8; Goelman Decl. ¶ 10).  Individual Defendants Kirn, Fitzgerald, and Goelman also declare that Trustpoint extracted materials from their computers and phones "and this material was produced to DKG on January, 31, 2025."  (Kirn Decl. ¶ 8; Fitzgerald Decl. ¶ 8; Goelman Decl. ¶ 10).  Individual Defendants Kirn, Fitzgerald, and Goelman each deny deleting any materials "from my phone or computer."  (Kirn Decl. ¶ 9; Fitzgerald Decl. ¶ 9; Goelman Decl. ¶ 11).  They also deny deleting "calendar invites evidencing meetings with clients and leads sourced by DKG during the time of my employment at DKG." (*Id.*).

Individual Defendant Perez also declared that in November 2022, she "turned over the Perez laptop to Trustpoint to download the material from the device for discovery production. This included the material that was copied from the DKG laptop. Trustpoint extracted material from the Perez laptop and this material was produced to DKG on January 31, 2025. . .I believe that DKG

has all documents, communications or material which existed on the DKG laptop."  (Perez Decl. ¶ 13).

### E. Plaintiff Fails to Meet Its Burden on Establishing Prerequisites Required to Trigger a Rule 37(e) Sanction Against Individual Defendants Kirn, Fitzgerald and Goelman

As a preliminary matter, the Court finds that the facts set forth in Sections II.D.1.a. through 1.c. are not really in dispute. Ultimately, then, the Court holds that Plaintiff has met its burden to establish that Individual Defendant Perez erased the contents of the DKG-issued laptop before she restored it to its factory settings and before she returned that laptop to Plaintiff.

The parties do not dispute that the DKG-issued laptop is the only device that is the subject of the spoliation motion. (Motion, p. 3; ID Opposition, pp. 3, 6; DC Opposition, p. 6).  Given that reality, the Court carefully considered the conduct of each Individual Defendant.

As set forth above, Plaintiff must meet its burden to satisfy the existence of all four criteria listed in Fed. R. Civ. P. 37(e) before the Court must analyze whether prejudice resulted or a defendant acted with intent to deprive Plaintiff of information for use in litigation.  Thus, the Court must first examine the conduct of Individual Defendants Kirn, Fitzgerald, and Goelman related to the DKG-issued laptop with these four perquisites in mind.

Here, the Court analyzed the evidence before it to determine whether Plaintiff met its burden on establishing the first and third triggering criteria, namely: (1) whether Individual Defendants Kirn, Fitzgerald, and Goelman had a duty to preserve ESI on the DKG-issued laptop; and (3) whether the "loss of the ESI was due to a party's failure to take reasonable steps to preserve it." *Mod. Remodeling,* 2021 WL 3852323, at *10.

The Court first finds that the DKG laptop at issue was given only to Individual Defendant Perez for her use.  (Kerr Decl. ¶ 8; Perez Decl. ¶ 3).  The Court next finds that Plaintiff has not put

forth any evidence that anyone other than Individual Defendant Perez used the DKG-issued laptop. The Court also finds that the credible evidence before it establishes that between early June 2022 and by no later than on or about June 12- June 13, 2022, Individual Defendant Perez (with the assistance of Ms. Bramson) transferred material from the DKG-issued laptop to an external hard drive, uploaded that material to the Perez laptop, and later deleted the contents of DKG-issued laptop. (Perez Decl. ¶ 7; Bramson Decl. ¶ 4; Mueller Decl. ¶¶ 5-6). Put another way, Plaintiff has not put forth any evidence that Individual Defendants Kirn, Fitzgerald, or Goelman played any role in Perez's copying and later erasing the material from the DKG-issued laptop. Indeed, the evidence before the Court establishes otherwise. (*Id.*; Kirn Decl. ¶ 3; Fitzgerald Decl. ¶ 3; Goelman Decl. ¶ 3).

The Court further finds that Plaintiff has failed to put any evidence before it that Individual Defendants Kirn, Fitzgerald, or Goelman conspired with Individual Defendant Perez to erase the contents of the DKG-issued laptop, nor are there any co-conspirator statements establishing that these Individual Defendants knew that Individual Defendant Perez was going to erase the contents of the DKG-issued laptop.

Accordingly, because Plaintiff has failed to meet its burden, by clear and convincing evidence, that Individual Defendants Kirn, Fitzgerald, or Goelman: (a) had any duty to preserve the contents of a laptop that was neither issued to them nor used by them; and (b) took any steps to erase the DKG-issued laptop, let alone failed to take reasonable steps to preserve its contents, the Court cannot find that these three Individual Defendants have violated Rule 37(e).

Moreover, because Plaintiff has not established the existence of two of the four Rule 37(e) triggering criteria, the Court is not required to analyze Rule 37(e)(1) or Rule 37(e)(2). *Mod. Remodeling*, 2021 WL 3852323, at *10. Ultimately, then, in the absence of: (a) any prejudice to

Plaintiff caused by the actions of Individual Defendants Kirn, Fitzgerald, and Goelman related to the DKG-issued laptop; and (b) any evidence that they acted with the respect to the laptop, let alone with the intent to deprive Plaintiff of the use of the DKG-laptop's contents, the Court cannot impose any sanctions against them, including an adverse jury instruction. *Gov't Employees Health Ass'n*, 343 F.R.D. at 482.

Accordingly, the Motion is **DENIED**, as to Individual Defendants Kirn, Fitzgerald, and Goelman.

The Court now turns to the conduct of Individual Defendant Perez to determine whether Plaintiff has met its burden in establishing that spoliation occurred, warranting an adverse jury instruction.

### F.  Individual Defendant Perez and the Duty to Preserve

The undersigned analyzed the first element under Rule 37(e): when Individual Defendant Perez had an obligation to preserve the ESI on the DKG-issued laptop.

As a preliminary matter, it is worth stating that "there is no general duty to preserve documents, things or information, whether electronically stored or otherwise." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 520 (D. Md. 2010).  Rather, a party seeking spoliation sanctions must first establish that the party with the evidence had an obligation to preserve it. *Turner*, *supra*, 736 F.3d at 282.

Courts within this Circuit have found different scenarios that trigger the duty to preserve. For instance, correspondence that threatens litigation triggers a party's duty to preserve evidence, because at that point a party has reason to anticipate litigation and implement a litigation hold to preserve evidence for use in the likely litigation.  *Goodman v. Praxair Services, Inc.*, 632 F.Supp.2d 494, 511 (D. Md. 2009); *see also Turner*, *supra*, 736 F.3d at 282(duty to preserve exists

if there is correspondence threatening litigation).  In addition, a party's receipt of a demand letter or of a request to preserve triggers a duty to preserve. *Turner*, 736 F.3d at 282; *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 181 (D. Md. 2008).  A party's receipt of notice that another party intends to pursue a claim also triggers a duty to preserve.  *Steves and Sons, Inc.*, 327 F.R.D. at 106.

The aforementioned list is not exhaustive; "indeed 'the absence of these things does not vitiate the independent obligation of an adverse party to preserve. . . information if th[at] party knows or should of impending litigation.'" *Jennings*, *supra*, 679 F.Supp.3d at 292 (quoting *Steves and Sons, Inc.*, 327 F.R.D. at 106)(further citation omitted).  Put another way, there are other circumstances that also trigger a party's duty to preserve. Specifically, a duty to preserve evidence exists "not only during litigation, but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."  *Silvestri*, *supra,* 271 F.3d at 591 (further citation omitted); *see also Peppers v. Moubarek*, Civ. No. PWG-19-2346, 2020 WL 263491, at *2 (D. Md. Jan. 17, 2020).  In such a scenario, a court must engage in a two-step inquiry: first, whether the party "should have reasonably anticipated litigation;" and second, whether "[a party] should reasonably have known that the evidence he deleted might be relevant to such litigation."  *Modern Remodeling, Inc.*, *supra*, 2021 WL 3852323, at *6 (quoting *Steves and Sons, Inc. supra*, 327 F.R.D. at 105).

Furthermore, the scenarios "imputing reasonable anticipation of litigation are 'highly case specific and fact dependent.'" *Jennings*, *supra*, 679 F.Supp.3d at 292 (quoting *In re: Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 512 (S.D.W. Va. 2014)).[6]

---

[6] The cases cited by the Individual Defendants in their opposition are factually distinguishable from the instant case. *See* ID Opposition, pp. 7-8. For instance, the court in *Turner*, *supra*, at 282, found that defendant had no duty to preserve audio recordings of telephone calls related to the incident in the absence of notice from the plaintiff about contemplated litigation; defendant's recycling of voice recordings of the events at issue was standard operating

Analyzing the facts and the law, the Court first finds that on or about July 1, 2022 Plaintiff first notified Individual Defendant Perez of its intent to sue her and requested a preservation of evidence, roughly three days after Individual Defendant Perez resigned.  (ECF No. 108-7; ECF No. 109-1, ECF No. 113-3, p. 2; Perez Decl. ¶ 12). Thus, there is no question that July 1, 2022 would be the **latest** date that Individual Defendant Perez had an obligation to preserve evidence.

However, that does not end the Court's analysis. Plaintiff initially maintains that Individual Defendant Perez had an obligation to preserve ESI on the DKG-issued laptop for the period of "March 12 to June 28, 2022." (Motion, p. 2).  Subsequently, Plaintiff pivots to assert that all of the Individual Defendants "'failed to take reasonable steps to preserve' the ESI on the DKG laptop." (Reply, p. 1).  In addition, Plaintiff argues that the electronic communications (chats) dated May 12, 2022 and June 20, 2022 contain admissions by the Individual Defendants that must be construed to establish that "Ms. Perez and the other Individual Defendants anticipated litigation on the day that they resigned and Ms. Perez wiped the laptop." (Motion, p. 5).

As held above in Section II.E., the Court will only analyze whether Plaintiff met its burden to establish that Individual Defendant Perez reasonably anticipated litigation.  Next, the Court liberally construed Plaintiff's contradictory arguments, and will determine whether a duty to

---

procedure. Or, for example, in *Goodman*, *supra*, at 509, the court engaged in a very fact-intensive analysis and found that the defendant's duty to preserve evidence was triggered by a letter sent from the plaintiff to the defendant's CEO that openly threatened litigation. The case does not stand for the proposition that only if a party receives a threatening letter from the other party or only receives notice of a dispute is a duty to preserve triggered.

In *Snell v. Reid*, 2024 WL 2815061 (4th Cir. 2024)(per curiam) the Fourth Circuit held that the trial court did not abuse its discretion in denying plaintiff's spoliation motion where evidence was that plaintiff, a tenant, merely told her landlord that she was injured on the premises. In *Jennings*, *supra*, at 292-93, only after engaging in a "highly case specific and fact dependent" analysis did the court find that defendant university did have a duty to preserve evidence early than it had claimed.  In sum, all cases cited by the Individual Defendants involve facts dramatically different from those present here, highlighting that courts must engage in a highly fact-specific analysis to determine whether a party reasonably anticipated litigation.

preserve arose-- or Perez anticipated litigation-- on June 28, 2022 or earlier (i.e., before Individual Defendant Perez returned the DKG-issued laptop).

The Court first analyzed Individual Defendant Perez's self-serving statement that she did not anticipate litigation before July 1, 2022.  (Perez Decl. ¶ 15).  The Court did not find this statement to be persuasive, given the fact that more contemporaneous statements from 2022 existed.[7]

The Court next analyzed the electronic communications (chats) dated May 11-12, 2022, which also Individual Defendants Perez and Fitzgerald.  (ECF No. 103-3, pp. 3-4).  The reasonable inferences that the Court draws are: (a) that Perez and Fitzgerald are discussing  an appointment related to a listing in Washington, D.C., and the hope that any sales transaction related to it will occur when after they are part of The Phoenix Group; (b) they are also discussing lining up other opportunities (listings), with Perez encouraging Fitzgerald that "your sellers aren't married to DKG, they're married to Maura Fitzgerald;" (c) Fitzgerald is concerned that Ms. Kerr will take some sort of action or that Ms. Kerr would have what she perceives to be a negative response towards them when Ms. Kerr finds out about their actions related to at least the one listing ("just want to avoid any possible Donna BS in advance, which we know is coming);" and (d) when Individual  Defendant Perez says "Girl, there's gonna be Donna BS that's inevitable," she agrees with Individual Defendant Fitzgerald that Ms. Kerr will negatively react to them moving forward on the listing, to include taking some type of action against them.  The Court finds that these electronic communications (chats), by themselves, do not clearly signify that Individual Defendant

---

[7] A judge tasked with finding the facts has the right to disregard any aspect of a witness' testimony or statements if judge finds that information provided is inherently improbable due to interest or bias. *See generally Select Auto Imports Incorporated v. Yates Select Auto Sales, LLC*, 195 F. Supp.3d 818, 823 (E.D. Va. July 2016). When analyzing whether to believe a witness, the court evaluates whether the witness may benefit in some way from the outcome of the case, which could create a motive to fabricate and may sway a witness to make a statement that advances her own interest.  *See generally Davis v. Alaska,* 415 U.S. 308, 316 (1974).

Perez anticipated that Ms. Kerr would initiate litigation against them because of the conduct related to the listing.

The Court further finds that Individual Defendant Perez copied the contents of the DKG-issued laptop to an external hard drive, and then transferred the information from the hard drive to the Perez laptop. (Perez Decl. ¶ 7;  Bramson Decl. ¶ 4). These events occurred between in or about early June 2022 and on or about June 12, 2022-June 13, 2022.  (Mueller Decl. ¶¶ 5-14).  At some unspecified date ("after the copying was complete"), which could be no later than June 28, 2022, Individual Defendant Perez reset the DKG-issued laptop back to its factory settings before returning it to Plaintiff.  (Perez Decl. ¶ 7).  The Court also analyzed Perez's statement that she deleted the **entire** contents of the DKG-issued laptop because she "was concerned about Ms. Kerr having access to over five years of personal and confidential information and wanted to protect it."  The Court finds this statement self-serving and not credible; Individual Defendant Perez could have erased her personal information and left the remaining information on the laptop that she concedes was not her own but belonged to her employer and was given to her to aid her in performing work for Plaintiff, not to store her personal information. Analyzing these facts together, the reasonable inference that the Court draws is that Individual Defendant Perez erased the entire contents of the laptop because she did not want Ms. Kerr to see any of the DKG-related work that she had done using the DKG-issued laptop, particularly related to the transactions that were to close after June 28, 2022.  These facts must be considered, along with the May 11-12 chats, in analyzing when the duty to preserve arose.

The Court also analyzed electronic communications (chats) dated June 20, 2022, which involved Individual Defendants Perez, Goelman, and Kirn. (ECF No. 103-3, pp. 6-8).  The reasonable inferences that the Court draws from the statements are: (a) Individual Defendant

Goelman is upset with Ms. Kerr because she thinks that Ms. Kerr spoofed her identity to market to some of her contacts about an event without her knowledge; (b) Individual Defendant Perez commented that she had a similar experience with "texts and emails going out [from Plaintiff's database]" that she "had no knowledge of with [her] name on them;" (c) Goelman wanted to resolve all issues related to Ms. Kerr's alleged violation of "Telecommunications law"/"illegal marketing practice" before resigning from DKG; (d) Goelman consulted with a friend in the Human Resources field, who suggested that she contact "legal" at Compass DMV; and (e) Goelman wanted Ms. Kerr "to feel scared to come after us," which the Court infers means that Goelman wanted Ms. Kerr to be scared about pursuing legal action against them. Because Individual Defendant Perez is part of this string of chats, the Court reasonably infers that she is aware that the parties are discussing contacting "legal" to try to determine what to do if Ms. Kerr takes adverse action against them.  The Court further finds the next part of the exchange particularly relevant to the question at hand:

> **Susan Kirn**: And it never ends. . . .(sic) I realize I have become so complacent. . .But you are right if nothing else than to throw down some warnings of  don't f w (sic) me. I Like the advice of going to compass legal for a message with more legal punch and clutch phrasing.

> **Natalie Perez**: Agreed! Whatever we can have in our "back pocket" for her to hesitate going after us is essential. Especially for me and Susan and our database because she's gonna go after us just like she did David.

> **Robin Goelman**: Yep!

(ECF No. 103-3, p. 8). The reasonable inference that the Court draws is that Individual Defendant Perez clearly agreed with idea of  contacting "legal," which the Court infers to mean an attorney, because she is interested in having a strategy to try to make Ms. Kerr think twice about pursuing legal action against them.

Engaging in the two-step inquiry outlined in *Steves and Sons*, then, the Court considered and contextualized Individual Defendant Perez's statements in the May 11-12 chats and the June 20, 2022 chats, and considered her conduct in deleting the entire contents of DKG-issued laptop before she returned a factory-reset version of the same to Plaintiff. The Court first finds that Plaintiff has met its burden, by clear and convincing evidence, that Individual Defendant Perez was reasonably anticipating litigation from Ms. Kerr before June 28, 2022 (i.e., before she returned the DKG-issued laptop). *Steves and Sons, Inc.*, 327 F.R.D. at 105. Second, the Court finds that the evidence before it establishes that the Individual Defendant Perez does not reject the idea that the DKG-issued laptop contained "sales contracts, disclosures, listing/buyers agreements, [and] settlement statements relevant to this matter" before she erased the laptop's contents and performed a factory reset. (Perez Decl. ¶ 4). Indeed, she could not, because to justify copying the laptop's contents she also declared that she had clients at DKG "who had transactions who were set to close after June 28, 2022" and that she "had a duty to assist them through closing." These statements led the Court to infer that information like listing/buyer agreements were on the DKG-issued laptop. This would explain why Individual Defendant Perez copied the contents of the DKG-issued laptop to a hard drive and then to the Perez laptop: so that she could later use the materials from DKG to aid her with clients. (Perez Decl. ¶ 6). Thus, the Court further finds that Plaintiff has met its burden to establish that Individual Defendant Perez knew that when she deleted all information from the DKG-issued laptop that it would be relevant to any future interaction with Plaintiff, including legal action involving Plaintiff. [8]

---

[8] The Court did not find persuasive Plaintiff's argument that a June 22, 2022 email chain from Individual Defendant Kirn to an employee of Defendant Compass DMV helps to establish that Individual Defendant Perez reasonably anticipated litigation. Even though Individual Defendant Perez is on that email chain via a "cc," the Court finds that this email merely demonstrates that Perez was aware of Kirn asking questions that might be construed as Kirn seeking legal advice; this email does not support the notion that Individual Defendant Perez was anticipating litigation. The Court further finds that Plaintiff has failed to meet its burden to establish that the calendar invitations in emails, (ECF No. 103-8, pp. 2-24), put before the Court actually demonstrate spoliation occurred. Had Plaintiff submitted **evidence**

In sum, Plaintiff has met its burden to establish that Individual Defendant Perez had a reason to anticipate litigation and preserve evidence in June 2022, i.e., at or about the time that she deleted the contents of the DKG-issued laptop.

Assuming, *arguendo*, that the Court erred in finding that Individual Defendant Perez reasonably anticipated litigation at the time that she erased the contents of the DKG-issued laptop, as set forth below, the Court ultimately holds that Plaintiff has not met its burden as to the second, third, and fourth  predicate elements of Rule 37(e).  Thus, no sanction is proper.

### G.  Plaintiff Has Failed to Meet Its Burden on the Second and Third Rule Predicate Elements of Rule 37(e)

#### 1.  ESI: Is it Lost?

The Court next examined the second threshold requirement under Rule 37(e): whether the ESI at issue has been lost.[9]

In this Circuit, ESI is considered "lost" if "it is irretrievable from another source, including other custodians." *Steves and Sons, Inc., supra*, 327 F.R.D. at 107; *see also Modern Remodeling, Inc.*, 2021 WL 3852323, at *8 (citing Rule 37, Advisory Committee Notes to the 2015 Amendments)( "[b]ecause [ESI] often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere")).

The Court also finds that, before seeking sanctions, Plaintiff must first demonstrate that it made a good faith effort to determine whether the ESI is truly "irretrievable from another source."

---

(not argument) establishing the invitations' significance, the Court might have found these relevant.

[9] Individual Defendants and Defendant Compass argue that Plaintiff cannot prove that the "items purportedly destroyed or lost actually existed," asserting, in essence, that Plaintiff is speculating that the DKG-issued laptop actually contained ESI relevant to this case.  (ID Opposition, pp. 9-10; DC Opposition, p. 7).  The Court is unpersuaded by these arguments. These arguments fly in the face of Individual Defendant Perez's explanation that she copied the contents to the Perez laptop because she wanted to be able to help clients with closings after June 28, 2022. Indeed, the reasonable inference that the Court draws from the evidence before it is that the DKG-issued laptop had ESI on it relevant to topics at issue in this litigation; why else would Individual Defendant Perez take steps to "mirror" and migrate this data to the Perez laptop if it had nothing to do with  existing clients and possible leads?

*See GMS Indus. Supply, Inc. v. G&S Supply, LLC*, Civ. No. 2:19-CV-324 (RCY), 2022 WL 853626, at *5 (E.D. Va. Mar. 22, 2022) ("[i]rreplaceability does not require a party to pursue every possible avenue for replacing or restoring the ESI, [however the party] must show that it made some good-faith attempt to explore its alternatives before pursuing spoliation sanctions").

It is undisputed that Individual Defendant Natalie Perez completely erased the contents of the DKG-issued laptop, and that Plaintiff's computer forensic expert has not been able to recover any data from the DKG-issued laptop. (Perez Decl. ¶ 7; Hirschfeld Decl. ¶ 16).

However, Plaintiff has failed to meet its burden to establish that the information on that laptop is truly irretrievable from another source. *GMS Indus. Supply, Inc.*, 2022 WL 853626, at *5. Relatedly, Plaintiff has failed to demonstrate that it made a good-faith attempt to explore alternatives before filing the spoliation motion. (*Id.*). For instance, there is no evidence before the Court that Plaintiff: (a) deposed Individual Defendant Perez about what material was on the DKG-issued laptop before it was erased, including the sales contracts, disclosures, listing/buyers agreements, and settlement statements "relevant to this matter;" (b) deposed Individual Defendant Perez, asking her to describe with particularity what information she copied and kept from the DKG-issued laptop, including for the DKG clients with transactions which were set to close over June 28, 2022; (c) attempted to obtain information third party entities (e.g., Google) relevant to this case; (d) deposed Individual Defendants Kirn, Fitzgerald and Goelman about the ESI and other evidence relevant to this case; and (e) deposed Individual Defendant Perez to describe with particularity  the documents produced to Plaintiff that were on the DKG-issued laptop and the Perez laptop.

In contrast, the Individual Defendants, who do not have the burden of proof, have put before the Court unrefuted evidence that Individual Defendant Perez made a "mirror image" of the

30

DKG-issued laptop and confirmed that the contents of the DKG-issued laptop matched what she copied to the Perez laptop. (Perez Decl. ¶ 7). In addition, the record supports that at the time that the spoliation motion was filed, Individual Defendants Perez, Kirn, Fitzgerald and Goelman had produced to Plaintiff "approximately 40,000 documents and communications [extracted] from [their] computers and [their] phones." (Perez Decl. ¶ 13; Kirn Decl. ¶ 8; Fitzgerald Decl. ¶ 8; Goelman Decl. ¶ 10).[10]

In sum, Plaintiff has failed to meet its burden, by clear and convincing evidence, that the information that was on the DKG-issued laptop was truly lost or "irretrievable from another source." Thus, the Court need not analyze the third predicate element of Rule 37(e). *Jennings*, 679 F.Supp.3d at 265; *Gov't Employees Health Ass'n,* 343 F.R.D. at 481.

### 2. Steps Taken to Preserve ESI

Even though the Court is not required to continue its analysis of the Rule 37(e)'s triggering elements, the Court still analyzed the third element: whether the loss of the ESI was due to Individual Defendant Perez's failure to take reasonable steps to preserve it.

The third element requires the Plaintiff to establish that Individual Defendant Perez failed to take reasonable steps to preserve the ESI that was on the DKG-issued laptop, causing it to be lost. As a general matter, "reasonable steps to preserve" does not mean that Individual Defendant Perez had a duty to preserve "every shred of paper, every e-mail or electronic document, and every

---

[10] Plaintiff's designated computer forensic expert has declared: (a) that he reviewed "documents produced by the Defendants in this case," concluding that they are "printed emails, text messages and documents [which have been scanned] into large groupings without any metadata; (b) that he reviewed "Plaintiff's request for production of documents and Defendants' responses to that request; and (c) "in my experience, allowing parties to self-collect and determine responsive documents. . .tends to miss or omit form production. . .responsive documents that would have been collected and produced by imaging entire devices and running search terms in a uniform matter." (Hirschfeld Decl. ¶¶ 17-20). Because these statements lack specificity (e.g., fail to identify specific requests for production of documents and emails and text messages reviewed), and the declaration is devoid of specifics about the forensic expert's qualifications to make conclusions about the "Defendants'" (which ones?) conduct, the Court finds that these opinion lack sufficient foundation or other indicia of reliability. The Court therefore declines to find these opinions persuasive.

back up tape." *See Steves and Sons, Inc.*, *supra*, 327 F.R.D. at 108 (quoting *Jenkins v. Woody*, Civ. No. 3:15CV355, 2017 WL 362475, at *15 (E.D. Va. Jan. 21, 2017)(further citation omitted)).

Again, it is undisputed that Individual Defendant Perez deleted the contents of the DKG-issued laptop before returning it to its factory setting. And, on this record, the Court finds credible Plaintiff's computer forensic expert's statement that he has not been able to recover any data from the DKG-issued laptop. That being said, Plaintiff has failed to meet its burden of establishing not only that the information is lost but that Individual Defendant Perez failed to take reasonable steps to preserve the material that was on the DKG-issued laptop before it was reset.

The Individual Defendants, who do not have the burden of proof or persuasion, have put before the Court declarations from Individual Defendant Perez and Ms. Bramson about efforts to preserve what was on the DKG-issued laptop. Individual Defendant Perez, with the aid of Bramson, copied the information from the DKP laptop to the Perez laptop. In particular: (a) Individual Defendant Perez made a "mirror image" of the DKG-issued laptop, copying the data from the DKG-issued laptop to an external hard drive and then uploading the data from the hard drive to the Perez laptop; and (b) Individual Defendant Perez verified that "the material on the DKG laptop matched the material on the Perez laptop by using the Perez laptop and the DKG laptop and seeing that all of the files, folders, and data were in the same locations on both laptops." (Perez Decl. ¶ 7). Thus, the evidence before the Court suggests that the information has not been lost.

Plaintiff, in contrast, has failed to put before the Court any **evidence** to rebut or controvert this narrative. For example, there is no evidence before the Court that Plaintiff: (a) deposed Individual Defendant Perez about the exact steps that she took to "mirror image" the DKG-issued laptop and migrate the contents to the hard drive and later the Perez laptop, and has found, e.g.,

inconsistencies or credibility issues with her statements; (b) deposed Ms. Bramson about the steps that she took to aid the "mirror imaging" process; (c) deposed Individual Defendant Perez about the chain of custody of the hard drive (Bramson's) and of the Perez laptop after the "mirror imaging" occurred, and when/whether both were given to third party vendors; (d) deposed Individual Defendant Perez about any certifications made to the Court about when the hard drive and laptop were provided to the third party vendor(s); and (e) deposed Individual Defendant Perez, asking her to describe with particularity the documents produced to Plaintiff that were on the DKG-issued laptop and later on the Perez laptop.  Equally important, there is no evidence before the Court that Plaintiff asked the Individual Defendants to turn over to Plaintiff's computer forensic expert Ms. Bramson's external hard drive and/or the Perez laptop for forensic evaluation.  To that end, Plaintiff has failed to put forth any evidence to establish whether one or both devices were adequately preserved and analyzed by a computer forensic person to determine, *inter alia*: (a) the significance of the 56,823 files and folders; (b) preservation efforts made for these two devices before any materials were produced in discovery.  A forensic review of these devices (e.g. what does the metadata reveal), combined with additional discovery, would certainly give Plaintiff a sense of whether the efforts undertaken by Individual Defendant Perez to preserve the ESI were reasonable, and whether ESI has been truly lost. *See Victor Stanley*, 269 F.R.D. at 521-529 (spoliation motions usually filed after forensic review so that the court has a better idea of the quantum and character of ESI that has been lost).

In sum, Plaintiff has failed to establish, by clear and convincing evidence, that Individual Defendant Perez has  truly "lost" the relevant ESI that was on the DKG-issued laptop (it does not exist in its entirety elsewhere) because of Perez's failure to take reasonable steps to preserve it.

Thus, the Court need not analyze the fourth prerequisite of Rule 37(e). *Jennings*, 679 F.Supp.3d at 265; *Gov't Employees Health Ass'n,* 343 F.R.D. at 481.

### H.  Restoration or Replacement of ESI through Additional Discovery

Even though the Court is not required to continue its analysis of the Rule 37(e)'s triggering elements, the Court still analyzed the fourth element: whether the ESI cannot be restored or replaced via additional discovery.

The law is clear that Plaintiff must show that the lost ESI cannot be restored or replaced through additional discovery before the Court determines whether prejudice exists, or before the Court determines whether Individual Defendant Perez acted with intent to deprive Plaintiff of using the ESI in litigation.  *Gov't Employees Health Ass'n*, 343 F.R.D. at 482.  Thus, the Court declines to skip this essential triggering prerequisite.

Plaintiff has failed to meet its burden, by clear and convincing **evidence**. Instead, the evidence before the Court about the discovery produced to date includes: (a) Individual Defendants Perez, Kirn, Fitzgerald and Goelman produced to Plaintiff "approximately 40,000 documents and communications [extracted] from [their] computers and [their] phones." (Perez Decl. ¶ 13; Kirn Decl. ¶ 8; Fitzgerald Decl. ¶ 8; Goelman Decl. ¶ 10).  Individual Defendants Kirn, Fitzgerald, and Goelman also declare that Trustpoint (third party vendor) extracted materials from their computers and phones "and this material was produced to DKG on January, 31, 2025." (Kirn Decl. ¶ 8; Fitzgerald Decl. ¶ 8; Goelman Decl. ¶ 10).  Individual Defendants Kirn, Fitzgerald, and Goelman each deny deleting any materials "from my phone or computer."  (Kirn Decl. ¶ 9; Fitzgerald Decl. ¶ 9; Goelman Decl. ¶ 11).  In addition, there is no evidence from the Plaintiff before the Court to refute that the sales contracts, disclosures, listing/buyers agreements, and settlement statements

"relevant to this matter" exist on the DKG Google Drive, which Plaintiff has always had access to. (Perez Decl. ¶ 4).

In sum, Plaintiff has not met its burden as to the fourth  predicate element of Rule 37(e). Thus, no sanction is proper.

### I.    No Sanction Required

As set forth above in Sections II.G.1. through II.G.2., Plaintiff has not put before the Court key pieces of evidence relevant to establishing whether the ESI has been lost, was not reasonably preserved and cannot be restored via additional discovery. Had Plaintiff done this, it could have aided the Court in finding that Individual Defendant Perez violated Rule 37(e).

#### 1.    Prejudice

As set forth above in Sections II.G.1. through II.G.2., Plaintiff has failed to put certain evidence before the Court, which means that it fails meet its burden on establishing the second, third, and fourth criteria under Rule 37(e). Thus, the Court need not address whether Plaintiff has been prejudiced by Individual Defendant Perez's actions under Rule 37(e)(1). Indeed, in order to find prejudice to Plaintiff, the Court must first find that the information has been lost.  *See* Fed. R. Civ. P. 37(e)(1) ("upon finding prejudice to another party f**rom loss of the information**")(emphasis supplied); *Government Employees Health Assn.*, *supra*, 343 F.R.D. at 481.

Relatedly, to find prejudice, this Court would first need to find that Plaintiff has met its burden of establishing that because of Individual Defendant Perez' actions, Plaintiff "cannot present evidence essential to its underlying claim." *Brittney Gobble Photography, LLC v. Sinclair Broadcast Grp., Inc.*, Civ. No. SAG-18-3403, 20202 WL 1809191, at *4 (D. Md. Apr. 9, 2020); *Victor Stanley*, 269 F.R.D. at 532 (movant needs to establish that its ability to prove its claims, "in

terms of liability and damages," has been substantially prejudiced); *see also Silvestri*, *supra*, 271 F.3d at 593-94 (failure to preserve vehicle involved in incident "significantly" prejudiced defendant's ability to defend itself). On this record, without clear, particularly-articulated argument about how Plaintiff has actually been deprived of **evidence** essential to proving its claims-and without proof related thereto-the Court cannot impose a sanction.

### 2. Intent to Deprive

Similarly, because Plaintiff has failed to put before the Court key pieces of evidence relevant to establishing whether the ESI has been lost, was not reasonably preserved and cannot be restored via additional discovery, the Court need not address whether Individual Defendant Perez acted with the intent to deprive the opposing party of ESI under Rule 37(e)(2). *Gov't Employees Health Assn.*, *supra*, 343 F.R.D. at 481. Thus, the Court cannot impose any sanction against Individual Defendant Perez, including an adverse inference instruction.[11]

### 3. Attorney's Fees and Costs

In light of Plaintiff's failure to meet its burden under Rule 37(e), 37(e)(1), and 37(e)(2), the Court declines to award fees and costs allegedly incurred in connection with the Motion, the Supplemental Motion, and Reply.

---

[11] As held in this Memorandum Opinion, it is undisputed Individual Defendant Perez deleted the contents of the DKG-issued laptop before resetting it to its factory settings. Next, there is little question in the Court's mind that Individual Defendant Perez deliberately and intentionally deleted the contents of the DKG-issued laptop, which contained evidence that is clearly relevant to this litigation; indeed, her statements are consistent with this finding. (Perez Decl. ¶¶ 6, 7). Had Plaintiff met its burden in establishing the four triggering criteria under Rule 37(e), the Court would have engaged in a robust analysis and might have found that some of the evidence before it-- including the May 4-5, 2022, May 11-12, 2022, and June 20, 2022 electronic communications (chats). (ECF No. 103-3, pp. 3-4, 6-8; ECF No. 103-9, pp. 2-6). Then, the Court would have still needed to determine whether Individual Perez's deletion was "motivated by an intent to deprive [Plaintiff] form the use of the information [in litigation]." *Fowler*, 673 F.Supp. 3d at 773. Plaintiff cannot presume that the Court would have ruled it its favor. *See Victor Stanley*, 269 F.R.D. at 516 ("when spoliation involves ESI, the related issues of whether the party properly preserved relevant ESI and, if not what spoliation sanctions are appropriate, have proven to be one of the most challenging tasks for judges, lawyers and clients").

**III.  CONCLUSION**

For the reasons cited herein, the Motion, ECF No. 103, is **DENIED**.

A separate Order follows.


Date: September 23, 2025                                      _____/s/_____
                                                             The Honorable Gina L. Simms
                                                             United States Magistrate Judge